(25 App. Div. 432.)

PEOPLE ex rel. POWERS v. KALBFLEISCH et al.

(Supreme Court, Appellate Division, Fourth Department. February 6, 1898.)

1. TAXATION—REDUCTION OF ASSESSMENT—PROOF OF OVERVALUATION.
    In a proceeding to reduce an assessment, relator must establish affirmatively that the judgment of the assessors as to value was erroneous.

2. SAME—FULL AND TRUE VALUE—HOW DETERMINED.
    Rev. St. (Banks' 9th Ed.) p. 1685, provided that for taxation property should be assessed "at its full and true value" as the same would be appraised in payment of a just debt from a solvent debtor. *Held* that, where the property had no fixed market value, its value was to be determined by its earning capacity as an investment, and the natural and probable cost of its reproduction.

3. SAME—REDUCTION OF ASSESSMENT—SUFFICIENCY OF EVIDENCE.
    A 10-story commercial building and the land covered by it were assessed at $1,000,000. In a proceeding to reduce the assessment, the average valuation put on the land alone by 25 witnesses was $426,880. The architect who planned, and the two contractors who constructed, the building, expressed the opinion that, though it originally cost about $800,000 it could be replaced for $400,000, owing to a reduction in the price of materials.

The net average annual income was about $21,000. The building was in a class by itself, and had no fixed market value. *Held*, that a judgment reducing the assessment to $825,000 would not be disturbed.

Appeal from special term, Monroe county.

A proceeding on the relation of Daniel W. Powers against Edwin A. Kalbfleisch and others, assessors of the city of Rochester, Monroe county, N. Y. From an order of the special term reducing the assessment of relator's property on the assessment rolls of said city for the year 1896, and from a judgment entered thereon, the assessors appeal. Affirmed.

This proceeding was instituted under the provisions of chapter 908, § 250, Laws 1896, which authorize any person assessed upon any assessment roll, claiming to be aggrieved by any assessment for property thereon, to present to the supreme court a duly-verified petition, specifying the grounds of the alleged illegality, or, if erroneous by reason of overvaluation, stating the extent of such overvaluation, or, if unequal, in that the assessment has been made at a higher proportionate valuation than the assessment of other property on the same roll, by the same officers, the extent of such inequality, and also stating that he is or will be injured thereby, and upon the presentation of such petition to obtain a writ of certiorari, to the end that a review of the assessment may be had. The relator's property which he claims has been improperly assessed is situate upon the northwest corner of West Main and State streets, in the city of Rochester, and is known as "Powers Block." This property was assessed by the defendants upon the assessment rolls for the year 1896 at the sum of $1,035,000, but this was reduced to $1,000,000 upon grievance day, the relator having then appeared, and insisted that the assessment should not exceed $800,000. Subsequently this proceeding was commenced, and upon the return of the writ issue was joined, and a reference ordered to take proofs upon the several matters at issue, and report the same to the court. An extended hearing was thereafter had before the referee, who, by the further order of the court, was directed to supplement his report with findings of fact and conclusions of law. In obedience to this last direction, the referee thereupon made his report, in and by which he found that the defendants, as such assessors, had overvalued and assessed the property in question on the assessment rolls for general city taxes for the year 1896 to the extent of $175,000, and that such assessment should be reduced from $1,000,000 to $825,000. Such report was thereafter confirmed, and from the order of confirmation, as well as from the judgment entered thereon, this appeal is brought.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

A. J. Rodenbeck, for appellants.
Roy C. Webster, for respondent.

ADAMS, J. The only matter litigated before the referee was that of overvaluation, and consequently the sole question for this court to determine is whether the learned referee was justified by the facts appearing upon the hearing before him in reducing the relator's assessment to the extent directed by the judgment appealed from. As preliminary to a discussion of this question, it may be assumed that every presumption in the case is in favor of the correctness of the assessment, and that the relator, in assailing the judgment of the assessors as to the value of his property, must establish affirmatively that such judgment was erroneous. People v. Davenport, 91 N. Y. 574. Having this rule in mind, it becomes of the utmost importance to determine to what extent these presump-

tions have been overcome, and with this end in view we proceed to an examination of the case. The premises upon which the Powers Block stands are probably as desirable for business purposes as any in the city of Rochester. They were purchased by the relator in different parcels between the years 1860 and 1870, and the total cost thereof was the sum of $234,000. The building itself, which is 10 stories in height, constructed of iron, stone, and brick, and said to be fireproof, is designed for commercial purposes; the ground floor being occupied by a bank, shops, and stores, and the remainder of the building by offices. The structure is really the union of four separate buildings, which were erected at intervals covering a period of five or six years, and finally reconstructed and united so as to form one large building, harmonious in its external appearance, and most conveniently arranged for the purposes for which it is occupied. Its total cost, which was considerably augmented by reason of the removal of completed work in order to replace the same with new and different work, and thereby obtain proper architectural results, was, as the relator testified, $825,000. So that the original cost of the entire property was, in round numbers, $1,060,000; and this fact would at first blush seem to fully justify and confirm the valuation placed upon it by the defendants. The actual cost of a piece of property is often a fact of great potency in determining its real worth; but it is by no means the only one, and in this particular instance it would prove of little value as a guide, for the reason that the lot upon which the building stands has nearly doubled in its market value since it was purchased by the relator, while the building itself, which was erected at a period when the materials of which it was constructed cost very much more than the same materials would cost at the present time, is obviously worth much less than it was when it was first built. This being the case, it is apparent that some other and more satisfactory rule of valuation should, if possible, be employed.

At the time the assessment in question was levied, the statutes of this state provided a method by which the valuation of real and personal property should be ascertained for the purposes of taxation, which was by estimating it at its full and true value, as the same would be appraised in payment of a just debt due from a solvent debtor (2 Rev. St. [Banks' 9th Ed.] p. 1685, § 17); and this, we think, will prove the most satisfactory rule for our guidance in the present instance. It is to be observed, then, that the primary requisite of this rule is that the defendants are to assess the relator's property at "its full and true value," and such value can best be determined, as we think, by ascertaining its debt-paying quality. This, however, is something which is often impossible of ascertainment with any degree of certainty, by reason of the difficulty which attends any attempt to formulate a rule which will accommodate itself to all cases. If a man possesses a piece of property which has a fixed and certain market value, it is much less difficult to determine what that property is worth in the payment of a debt than would be the case if its value were fluctuating and uncertain; and, unfortunately, the relator's property belongs to the latter class. It

cannot be said to have any market value, for the reason that there is no other property like it in the city, and consequently none has ever been put upon the market. Persons familiar with the value of real estate in that locality could, as was done upon the hearing before the referee, express their opinion as to its real value, but such evidence is, at the best, but the mere expression of an opinion which is not altogether satisfactory, and which in this case was especially confusing, inasmuch as the valuation thus stated ranged all the way from $600,000 to $1,400,000. Eliminating, therefore, all consideration of the market value of the property in question, we find that there remain two other methods of ascertaining its true and full value, and these are the ones which, as we understand it, were adopted by the learned referee. They are: First, its earning capacity as an investment; and, second, the probable and natural cost of its reproduction. It is urged by the learned counsel for the defendants that too much prominence was given upon the hearing and at the special term to the first of the two methods just mentioned, but we are unable to coincide in that view. Upon the contrary, we are inclined to think that the net income of a building constructed for commercial purposes, and as an investment, is an important element in determining its assessable value; for, as was said in an analogous case:

"A thing, to be worth its cost, must be able to pay out of the profits from its use and enjoyment an income bearing some relation to the interest due from an investment or loan of a sum of money equal to such cost, and over and above the loss by wear or waste." People v. Pond, 13 Abb. N. C. 1.

To illustrate, no one would ever think of purchasing the Powers Block for any other reason than because it was a revenue-producing investment, and consequently its net income must necessarily bear a ratio to and determine its true value. The relator testified that the average net annual income derived from his building for the past 15 years was $21,348.64, which, when capitalized, would be equivalent to less than 3 per cent. upon $800,000. The correctness of this statement is, however, challenged by the defendants, and it is claimed that the relator, in order to reduce the net income of the property, has charged certain items to the expense account thereof which do not properly belong there. To meet this evidence, therefore, two expert witnesses were called, one of whom, Mr. Bower, made a thorough examination of the relator's books and vouchers for the year 1895, and stated as the result of such examination that he found the net income for that year to be $26,017.35. To reach this result, however, he disallowed the sum of $3,500, which the relator was compelled to pay as his share of the cost of paving West Main street, which, we think, was quite as much an expense as any other tax; but, even with this item thrown out, the income for the year 1895, as estimated by this witness, would yield but a trifle over 3 per cent. upon a capital of $800,000. The other expert made the net income for 1895 a little more than Mr. Bower's estimate, but not enough more to appreciably increase its percentage. It is apparent, therefore, that as a source of revenue the relator's property during the year 1895, when it is not denied that it was developed to its fullest earning capacity, did not yield to exceed 2.6 per cent.

upon the amount for which it was assessed, and not quite 4 per cent. upon the valuation as found by the referee. This, we think, amounts to a demonstration that the full and true debt-paying valuation of the property was considerably less than the amount fixed upon by the defendants. But when we come to apply the other test, namely, the cost of reproduction, it will be seen that the conclusion of the learned referee is established with equal certainty. Upon the trial 25 witnesses were called to express their opinions as to the fair market value of the relator's land independent of the building standing thereon. Twelve of these witnesses who were sworn in behalf of the relator estimated its value at from $233,000 to $333,000, while the 13 who testified for the defendants gave estimates ranging from $500,000 to $650,000, the average valuation of the 25 witnesses being $426,880. The architect who planned, and the two contractors who constructed, the block, expressed the opinion that the building could be replaced, or that a similar building, and one as good in all respects, could be built at the present time for $400,000 at the outside. And upon this basis it will be seen that the true and actual value of the entire property does not exceed the sum of $826,880, or just about the valuation fixed by the learned referee. It is true that three gentlemen of large experience as contractors and builders, who were called to meet the evidence just adverted to, testified that, in their opinion, it would cost $600,000 to replace the building, but they were obliged to concede that they knew little or nothing of the plan upon which the building was constructed, or of the character and quality of material used in its construction, and that their opinions were the result of mere casual observation. It should be noted in this connection that the great discrepancy between the cost of the building and the estimated cost of its reproduction was accounted for in a large measure by the reduction in the cost of materials. Mr. Gorsline, the contractor who built the block, testified that such reduction, in his opinion, would be equal to three-fifths of the original cost; and by way of illustration he stated that cast iron, which cost $75 per ton when the building was erected, can now be purchased for from $18 to $20 per ton. But, without entering further into the details of the cost of the block, it only remains for us to say that when the defendants' determination as to the value of the relator's property is subjected to either of the tests which we have applied, every presumption as to its correctness is overcome, and it is made clear that it does not conform to the standard which was furnished by the statute law of this state at the time when it was made; while, upon the other hand, an application of the same tests makes it equally obvious that the conclusion arrived at by the learned referee is fully sustained. The judgment and order appealed from should therefore be affirmed, with costs as of an appeal from an order. Laws 1896, c. 908, § 255; People v. Pratt, 66 Hun, 578, 21 N. Y. Supp. 853, affirmed 138 N. Y. 655, 34 N. E. 513.

Judgment and order affirmed, with $10 costs and disbursements. All concur.