(June 2, 1908.)

## VILLAGE OF TWIN FALLS, Respondent, v. D. P. STUBBS et al., Appellants.

[96 Pac. 195.]

MUNICIPAL LAW—POWER OF EMINENT DOMAIN—RIGHT OF MUNICIPALITY TO EXERCISE THE POWER OF EMINENT DOMAIN—MUNICIPAL POWER OF EMINENT DOMAIN BEYOND MUNICIPAL LIMITS—CONDEMNATION OF PUBLIC WATERS.

1. Under the provisions of sec. 1 of an act approved Feb. 24, 1905 (Sess. Laws, 1905, p. 335), authorizing and empowering cities, towns and villages to construct and maintain sewerage systems, a city or village organized under the general laws of this state may construct a sewer system, and for the purposes thereof may exercise the power of eminent domain either within or without the territorial jurisdiction of such municipality.

2. A sewerage system is a public use within the meaning and intent of sec. 5210, Rev. Stat., and amendments thereto.

3. An action to condemn grounds through and over which to build a sewerage system and for sewerage dumpage and outlet, in which no reference is made to or mention made of any waters flowing in, along or over such strip of land, and where no waters or water rights are mentioned or described in the judgment, is an action purely for the condemnation of the land itself as distinguished from any water or water right which may be appurtenant thereto or flow thereover, and such a judgment will not be viewed or considered as a condemnation or appropriation of any waters.

(Syllabus by the court.)

APPEAL from the District Court of the Fourth Judicial District for Twin Falls County. Hon. E. A. Walters, Judge.

Action by the village of Twin Falls to condemn lands for sewerage purposes. Judgment for the plaintiff and defendants appealed. *Affirmed.*

Sweeley & Sweeley, for Appellants.

A village has no legal right to condemn and appropriate property for sewer purposes. No such right is expressly given

by statute, and in the absence of a statute the right does not exist. It cannot obtain by implication. The right to condemn property, being in derogation of the common law, must be strictly construed. (2 Abbott Mun. Corp., sec. 747; 7 Ency. of Pl. & Pr. 536; *San Francisco etc. Co. v. Alameda etc. Co.*, 36 Cal. 639; 7 Ency. Pl. & Pr. 766.)

The statute specifying for what uses the right of eminent domain can be exercised is found in 5210, Rev. Stat., as amended by the act of March 3, 1903 (Sess. Laws, p. 203). That statute in subdivision 2, enumerates a number of uses, and ends with the clause, "roads, streets, alleys and all other public uses for the benefit of any county, incorporated city, village, town or the inhabitants thereof."

Reference to subsection 7 of the same act shows that subsection 2 was not intended to cover sewers, for by subsection 7 it is expressly provided that the right can be exercised for "sewerage of any incorporated city."

Ordinarily, small communities like towns and villages do not require sewers, and there is a reason why the legislature might give the right to cities and withhold it from towns and villages. It is evident from the fact that towns and villages are omitted from the seventh subdivision of the section that it was the intention to limit the right to cities only. The statute referred to is the only one that can possibly be held to relate to villages.

A municipal corporation cannot condemn property beyond its limits unless authority is expressly given. (Lewis on Eminent Domain, sec. 240; *City of Puyallup v. Lacey,* 43 Wash. 110, 86 Pac. 215.)

W. A. Babcock, City Attorney, for Respondent.

The legislature in 1905 passed an act which provides for the construction of sewers in villages, expressly providing that cities, towns and villages may acquire, by condemnation or otherwise, such real or personal property within and without the limits of the city, town or village as may be deemed necessary or convenient for the disposal of its sewerage. (Sess. Laws 1905, p. 335.)

The village is not seeking to appropriate the waters of Rock creek for beneficial purposes as contemplated under laws of 1903, and it is not necessary for the village to make application to the state engineer for permit to use the channel of the creek for sewerage outlet.

The state or its agent in charge of a public use must necessarily survey and locate the route, and is by statute expressly authorized to do so. (Rev. Stat. 5214.) Exercising as they do a public function under express authority of the statute, their acts, in the absence of evidence to the contrary, would be presumed to be lawful.

AILSHIE, C. J.—This action was commenced by the village of Twin Falls against a number of persons owning the lands through which Rock creek in Twin Falls county runs. The plaintiff sought to condemn the channel of Rock creek and a strip of land twenty-five feet in width on each side thereof for use in constructing and maintaining a sewer and dump and outlet privileges for a sewer system. Prior to the trial of this case the village was organized under the general laws into a city of the second class, and filed its supplemental complaint showing that fact. The defendants, who are appellants in this court, answered, and the appellant, Gross, who is a purchaser from one of the original defendants, filed a supplemental answer setting up that fact, and also alleging that subsequent to the commencement of this action he had applied for and received a permit from the state engineer to appropriate and divert water from Rock creek for domestic purposes. This appeal is from the final judgment of condemnation. The respondent made a motion to strike out a large part of the matter contained in the transcript, for the reason that the same is not properly a part of the record on this appeal. That motion is confessed by the appellant, and it consequently leaves the case here on the complaint and supplemental complaint and the answers and supplemental answer, findings and judgment. This eliminates from our consideration most of the questions argued in appellants' brief.

We will consider, however, all the points that are properly presented in the record as it stands here.

It is contended by appellants that the village had no right to exercise the right of eminent domain. That, in the first place, it could not condemn lands for sewerage purposes, and in the second place, if it had that power it could not exercise it beyond the territorial limits of the municipality. We think both these questions are fully answered by the provisions of sec. 1 of an act approved Feb. 24, 1905 (Sess. Laws 1905, p. 335), authorizing and empowering cities, towns and villages to construct and maintain sewerage systems, etc. Sec. 1 provides in part as follows:

"In addition to the powers heretofore granted to cities, towns, or villages under the provisions of the laws of the state of Idaho now in force, cities, towns, or villages may by ordinances, by-laws, and under and by virtue of this act:

"First. Construct, build, or purchase, keep, conduct, and maintain a sewer system or sewerage disposal works therein, or elsewhere, of the character and keeping sufficient to furnish the inhabitants thereof, as well as the places and people along and in the vicinity of the lines of pipes, conduits, or aqueducts constructed or used for such purposes with a sewerage system and sewerage disposal works sufficient for all uses and purposes necessary for the comfort, convenience, health and well being of said city, town or village, and to that end may acquire by purchase, gift, condemnation or otherwise, to own, and possess, such real or personal property within and without the limits of the city, town or village, as in the judgment of the persons herein authorized to construct, purchase, conduct and maintain a sewer system and sewerage disposal works as may be deemed necessary and convenient."

This statute clearly authorizes cities, towns and villages to construct and maintain sewer systems and sewerage disposal works either within or without the corporate limits and for such purposes to "acquire by purchase, gift, condemnation or otherwise," all real estate necessary for such purpose. In connection with this power, subdivision 2 of sec. 5210, Rev. Stat., as amended by act of March 3, 1903 (Sess. Laws 1903,

p. 203), authorizes the exercise of the power of eminent domain by any incorporated city, town or village, for any and all public uses. A sewerage system is certainly a "public use" within the intent and meaning of this statute. By the 1905 statute quoted above, the power is expressly granted to maintain the system or any part of it, and to condemn for such uses outside of and beyond the territorial limits and jurisdiction of the corporation.

It is contended by appellants that under the statutes of this state and the provisions of art. 15 of the constitution, a municipality cannot condemn the waters of a stream for sewerage purposes. In other words, that a condemnation of the waters cannot be had for the purpose of dumping sewerage matter therein and polluting the stream and rendering it unfit for domestic purposes. The contention is made that this would be an "appropriation" within the meaning of the constitution and statute, and that while it is an appropriation, the "use" is not one enumerated either in the constitution or statute, and that the waters in this state cannot be taken for any other use or purpose than those enumerated in the constitution. This question does not arise on the record before us, and for that reason we decline to express any view as to its correctness. This action as shown both by the complaint, findings and judgment, was not an action to condemn the waters of a stream or any person's water right or water privileges, and the judgment does not extend to any right of use or privilege of enjoyment of any of the waters of this stream. It merely extends to a strip of land fifty feet wide through the center of which runs this gorge or canyon called Rock creek. It does not appear from the record that the appellants have any right in or claim to the waters (if any are flowing therein) of this canyon or gulch. If any water does flow therein and it has not been appropriated in accordance with law, it belongs to the state of Idaho. Gross alleges that he has a permit to use water therefrom, but the findings say nothing of that and the evidence is not here.

If the respondent municipality undertakes to pollute the waters of any stream or maintain any nuisance therein, or

along or over the lands of anyone, that will be a separate and distinct cause of action to be determined when it arises.

As we view the record, none of the other questions argued by appellants properly arise on this appeal. We discover no reason for interfering with the judgment of the lower court, and it is therefore affirmed, with costs in favor of respondent.

Sullivan, J., concurs.

Stewart, J., did not sit at the hearing and took no part in the decision.