# LOUIS APPLEFELD

### *vs.*

# THE MAYOR & CITY COUNCIL OF BALTIMORE.

*Condemnation proceedings. Damages. Evidence of structural value.*

Evidence of the structural value, less depreciation, of buildings that are well adapted to the land and its surroundings, is admissible in condemnation proceedings as reflecting upon the market value of the land.                                    p. 531

*Decided June 24th, 1919.*

Appeal from the Baltimore City Court. (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER and ADKINS, JJ.

*Jacob J. H. Mitnick* and *James J. Lindsay,* for the appellant.

*George Arnold Frick* (with whom was *S. S. Field* on the brief), for appellee.

URNER, J., delivered the opinion of the Court.

As the result of a condemnation proceeding in the Baltimore City Court the appellant was awarded $13,000 for certain property required by the city as part of the public reservation known as the Civic Center. On this appeal the principal question to be decided relates to the exclusion of evidence offered by the appellant as to the structural value of the buildings on the land condemned. The appellant owned a leasehold estate in the property subject to an irredeemable ground rent of $150 per annum. The condemnation was in fee simple and the total amount awarded by the inquisition returned by the jury was $16,500, which included an allowance of $3,000 to the owners of the reversion, and $500 to a tenant, who was in possession of part of the property for a term which was soon to expire.

The lot of ground affected by the condemnation extends from Gay street on the west to Frederick street on the east, and is improved with buildings fronting on those streets and used for store and warehouse purposes. On behalf of the city two real estate experts testified that the total value of the property in fee simple was $16,500, and another estimated it at $16,000. The reversion was valued at $3,000 on the basis of a capitalization of the ground rent at five per cent. The only witness for the city who appears from the record may have testified in detail as to the elements of the value of the property estimated the land to be worth $8,500 and the buildings $7,400.

In addition to the appellant's own testimony that he bought the property about thirteen years ago for $8,000, subject to the annual ground rent of $150, and that five years later he spent from $10,000 to $12,000 in improving the buildings, and that he considers his leasehold interest in the property to be now worth between $28,000 and $30,000, two witnesses were produced on his behalf who testified as to the value of the land alone, one of them estimating it at $9,712 and the other at $9,571 subject to the ground rent. An effort was later made by the appellant to prove the value of the build-

ings by having an expert builder testify as to the cost of their reproduction with a due allowance for depreciation. The attempt to introduce this evidence was opposed by the city, and its objection was sustained.

In the case of *McGaw* v. *Baltimore,* 131 Md. 430, where the admissibility of evidence of structural value was involved, we held that such value may be proved, with a due allowance for depreciation, as reflecting upon the market value of the land condemned, provided the buildings are well adapted to the land and its surroundings, and their structural value represents a fairly proportionate enhancement of the market value of the land. The principle of the rule which has thus been to recently stated by this Court is that the market value of the property is the ultimate and only measure of the award, but for the purpose of determining that value evidence of the structural value of the buildings is proper to be considered, unless they are not suited to the land and the locality or the structural value of such improvements is disproportionate to any enhancement in the value of the land which they could be reasonably supposed to produce. There is evidence in the record from which the jury might have found that in this instance the buildings are adapted to the land and its surroundings and that they add to the market value of the land to an extent fairly proportionate to their own structural value. Certain specific offers of testimony to further support and develop that theory were rejected in consequence of objections interposed by the city. The purpose of the evidence proffered by the appellant upon the subject of structural value was merely to prove the actual present value of the buildings as affecting the market value of the land taken under the condemnation. It is a familiar practice, and one which was adopted by the city itself in this case, to have experts on real estate values give separate estimates as to the land and the improvements. The witness for the city who appraised the buildings at $7,400 stated that it represented in his judgment their value commercially rather than structurally. There appears to be no good reason why testimony of a qualified

builder as to the structural value of improvements which are appropriate to the land and proportionately add to its market value should not be considered in the ascertainment of that value as well as the opinion of a real estate expert as to the amount which such improvements contribute to the value of the property. In our view of the case as presented by the record, the testimony offered by the appellant in reference to the structural value of the buildings was clearly competent, and its exclusion tended to injure his interests.

In *New York* v. *Dunn et al.,* 198 N. Y. 84, cited in *Mc-Gaw* v. *Baltimore, supra,* the Court of Appeals of New York, in holding evidence of structural value admissible, said: "In some cases the value of expensive structures may not enhance the value of the land at all. An extremely valuable piece of land may have upon it cheap structures, which are a detriment rather than an improvement. A man may build an expensive mansion upon a barren waste, and in such a case, the cost of the building may add little or nothing to the total value. In a greater number of cases, however, when the character of the structures is well adapted to the kind of land upon which they are erected, the value of· the buildings does enhance the value of the land." The Court further said it was common knowledge "that buildings not only differ from each other in design, arrangement and structure, but that many which are externally similar and are situate upon adjoining lands, are essentially different in the quality and finish of the materials used and in the character of the workmanship employed upon them. It must follow that such differences contribute in varying degrees to the enhancement in the value of the land, and we can think of no way in which they can be legally proved, except by resort to testimony of structural value, which is but another name for cost of reproduction, after making proper deduction for wear and tear. This may be by no means a conclusive test as to the market value of premises condemned for public use. But that is not the question at issue. The question is whether evidence of structural value is competent to show market value, when the

buildings are suitable to the land. * * * In valuing real estate for purposes of taxation the State resorts to the cost of improvements for the purpose of ascertaining the value of the land. * * * By analogy it would seem that when the State compels a man to give up his land for public use, and permits him to recover, not what he thinks it is worth, but only its fair market value, he should at least have the right to prove every element that can fairly enter into the question of market value."

There are questions raised in the record as to other rulings by the Court below in the course of the trial, but in none of these have we found any reversible error. It will be necessary, however, to remand the case for a new trial because of the error in the ruling which we have discussed.

*Ruling reversed, with costs to the appellant, and new trial awarded.*