BENJAMIN MOORE et al., as Executors. of KATHARINE T. MOORE, Deceased, Respondents, *v.* COLIN M. EADIE,, Appellant.

**Real property — lease — appraisal — provision in lease of real property for appraisal of value of building — appraisal may not be set aside because valuation is higher than court may determine — appraisers not required to adopt particular method of valuation where lease provided merely that they " value the building."**

1. An appraisal made by appraisers duly appointed in accordance with the terms of a lease providing that if the owner shall elect not to renew the same, appraisers shall be appointed " to value said building in its then actual condition," may not be set aside merely because the valuation is higher or lower than that which a court may determine after a trial.

2. A contention that the appraisers did not keep within their jurisdiction and exceeded their powers in that they did not value the building according to reconstruction cost less deterioration, cannot be sustained. No provision of the lease required the appraisers to use that method of valuation. It merely required them " to value the building."

*Moore* v. *Eadie,* 218 App. Div. 716, reversed.

(Argued April 4, 1927; decided May 3, 1927.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 3, 1926, unanimously affirming a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

*Warren Leslie* and *Edgar A. Martin* for appellant. An award made by appraisers is final and conclusive upon the question of damage in the absence of fraud. (*Williams* v. *Hamilton Fire Ins. Co.,* 118 Misc. Rep. 799; *Toledo Steamship Co.* v. *Zenith Transportation Co.,* 184 Fed. Rep. 391; *Wurster* v. *Armfield,* 67 App. Div. 158; *Matter of Fletcher,* 237 N. Y. 440; *Itoh & Co., Ltd.,* v. *Boyer Oil Co., Inc.,* 198 App. Div. 881.)

*Charles L. Woody* and *Frank L. Holt* for respondents. The court had power to set aside the appraisal and to determine the value of the building. (*Halstead* v. *Seaman,* 82 N. Y. 27; *Borrowe* v. *Millbank,* 5 Abb. Pr. 28; *Dodds* v. *Hakes,* 114 N. Y. 260; *Cullen* v. *Shipway,* 78 App. Div. 130; *Strome* v. *London Assurance Corp.,* 20 App. Div. 571; *Masury* v. *Whiton,* 117 N. Y. 679; *Matter of Burke,* 191 N. Y. 437.) The appraisers did not follow the provisions of the lease and submission, adopted a wrong theory and exceeded their powers. (*Blackwell's Island Bridge Case,* 198 N. Y. 84; *Duffy* v. *Kelly,* 55 N. J. 627; *Briggs* v. *Smith,* 20 Barb. 409; *Butler* v. *The Mayor,* 7 Hill, 329; *Smith* v. *Cooley,* 5 Daly, 401; *Van Cortlandt* v. *Underhill,* 17 Johns. 405; *Hiscock* v. *Harris,* 74 N. Y. 113; *People* v. *Schuyler,* 4 Weekly Digest, 570; *Freeman* v. *Ralph Realty Corp.,* 198 App. Div. 788; *Rand* v. *Redington,* 13 N. H. 72; *Adams* v. *Adams,* 8 N. H. 82; *Cook* v. *Carpenter,* 34 Vt. 121; *Howard* v. *Edgell,* 17 Vt. 9.)

CRANE, J. On October 13, 1903, the plaintiffs' testatrix executed a lease to one Cornelia Burtt, of the premises known as No. 321 West Twenty-fourth street, in the borough of Manhattan, city of New York. The term of the lease was for twenty-one years, beginning November 1, 1903. At that time there was a dwelling house standing upon said lot, which had been erected pursuant to the provisions of a previous lease, of which this lease in question was a renewal.

A clause in said lease provided that if the owner elected not to renew the same, the value of the building on the property should be determined as follows:

" The said party of the first part, her heirs or assigns, shall nominate one fit and impartial person and the said party of the second part, her executors, administrators or assigns, shall nominate one other fit and impartial person, which persons so nominated shall, each respectively, be an owner in fee simple of one or more lots in the immediate neighborhood in which the said lot hereby demised is situate, to value said building in its then actual condition."

[245 N. Y. 166]          Opinion, per CRANE, J.          [May,

If the two persons thus appointed could not agree upon the value of the building before the expiration of the lease, " then the parties hereto or either of them, or the heirs, representatives, successors or assigns of them or either of them, may, at any time after such expiration, apply to any person who as judge or justice may be holding Chambers of the Supreme Court of the said State in said borough, to name a third fit and impartial person, to be associated for the purposes aforesaid, with the two persons so nominated or appointed, and the decision of any two of the three persons so chosen whether as to the value of said building or as to the amount of said rent, shall in all cases be final and conclusive when ascertained by them as hereinafter also provided." A method was provided in the lease for ascertaining the rent in case of renewal, but there was no method provided for ascertaining the value of the building in case of no renewal, except as contained in the words above quoted.

All the rights of the tenant, Cornelia Burtt, in and to the lease, and the building upon said lot, were subsequently assigned and transferred to the defendant herein.

On August 12, 1924, the landlord gave notice to the tenant, in accordance with the provisions of the lease, that she elected not to renew the same, and that she would pay to the tenant the just and fair value of said building. The term of the lease expired November 1, 1924. Thereupon, the plaintiffs selected as appraiser, John C. Gabler, and the defendant, William C. Toby; and these two men being unable to agree, a third appraiser, one Henry Brady, was appointed by a justice of the Supreme Court.

The appraisal was made; Brady and Toby decided that the building was worth $7,000; Gabler refused to join therein.

The plaintiffs refused to pay the award, and brought this action to set it aside, alleging that the award was unfair and improper; that the methods used in fixing

the amount were without authority, and not according to the law, the terms of the lease or the agreement of the parties. After a trial, judgment was given setting aside the award, and fixing the value of the building at $3,900, which judgment has been unanimously affirmed by the Appellate Division. We are convinced that the courts below have misconstrued the terms of the lease, and that the plaintiffs failed to make out any case justifying an interference with the appraisal.

We can eliminate any question of fraud or wrong-doing, as no such claim is made. The only ground for attack is that the appraisers adopted a wrong rule of values. It was claimed by the respondents on the trial, and is urged here upon appeal, that the lease provided a method for valuing the building, which was by ascertaining the cost of its reconstruction, less depreciation. We find no such provision in the lease. The appraisers, according to the terms of that instrument, are to be owners in fee simple of one or more lots in the immediate neighborhood, and are to value the building " in its then actual condition." This specifies the time at which value is to be ascertained, but does not provide the method or manner of valuation. The appraisal was not to proceed like a judicial hearing (*Matter of Fletcher*, 237 N. Y. 440), and could have been made in any way which was fair and equitable. As the appraisers were to be lot owners in the immediate neighborhood, it is fair to assume that they were expected to have some knowledge of values, and could have made their appraisal without revealing the reasons for their conclusion. The appraisers, how-ever, wrote an opinion in which they stated that they had arrived at the valuation of the building by valuing the property as a whole, and deducting from it the value of the land. All three appraisers agreed that the value of the land was $5,000; two agreed that the value of the entire property was $12,000, and that the difference, $7,000, therefore, must represent the value of the building.

Personally, I can see nothing wrong with this method of procedure. The appraisers all agreed that the structure on the lot was an appropriate improvement. The land was 16.8 x 35, and the building a three-story dwelling with brick front, 16.8 x 28. The section had been restricted to residences by the Zoning Ordinances. The land had a market value, which would not change with the nature of the building upon it, if we exclude the cost of removal, which is not in this case. If the land were vacant, in estimating its market value, appraisers or judges could and should take into consideration the most advantageous use to which it could be put. Such is the rule in condemnation cases. (Lewis Eminent Domain [3d ed.], sect. 706; *City of Syracuse* v. *Stacey*, 45 App. Div. 249; affd., 169 N. Y. 231; *St. Louis, etc., Ry. Co.* v. *Maxfield Co.*, 94 Ark. 135; *Gorgas* v. *Phil., Harrisburg & Pittsburg R. R. Co.*, 215 Penn. St. 501; 10 R. C. L. sect. 113.) In valuing the land, therefore, these appraisers could value it as though it were vacant, and susceptible of having upon it a building such as the one in question, or any other suitable and appropriate structure, or in fact any other use to which the land could be put. All three appraisers agree that the value of the land was $5,000. If, therefore, the value of the entire property was $12,000, the balance must have been the value of the building. The one to complain of this method of valuation is the tenant, as the building very likely did not add its structural value to the land value. In estimating the most advantageous use which fixes land values, the appraisers might have considered a better and more available building than defendant's. This would likely leave less for the defendant's building than reconstruction value less wear.

Of course this method is not exclusive or final for ascertaining values, but it is not improper or illegal. The structural value ascertained by the cost of reproduction less deterioration is another method. (*Matter*

*of City of New York*, 198 N. Y. 84.) Either or both may be resorted to, according to the circumstances, and especially where the improvement is an appropriate one, and the agreement or lease is silent as to the method to be adopted. Appraisals such as this are not to be set aside, merely because the valuation is higher or lower than that which a court may determine after a trial. It is to avoid litigation that the parties make appraisal agreements final. Something is expected to be charged up to profit or loss. Both time and money are expected to be saved by the determination of appraisers. Judge Peckham, of this court, in *Perkins* v. *Giles* (50 N. Y. 228), said that awards by arbitrators would not be set aside for mere errors of judgment or because the arbitrators decided wrongly as to the law or the facts of the case; and in *Masury* v. *Whiton* (111 N. Y. 679) it was said:

" The award of an arbitrator cannot be set aside for mere error of judgment as to the law or facts of the case submitted to him. If, in making his award, he keeps within his jurisdiction and is not guilty of fraud, corruption or other misconduct affecting his award, then his award is unassailable."

Both of these cases were cited in *Matter of Burke* (191 N. Y. 437) to sustain this statement of the law. " The award thereunder is unassailable upon the ground that errors of law, or of fact, were committed. For it to be assailable at all, a ground must be found for charging the arbitrator with some misconduct, or with fraud, or with having exceeded his powers; or for the charge that the award, on its face, shows some mistake in figures, or in description, or some imperfection not going to the merits."

The respondents recognize this rule, and have sought to justify their position by claiming that the arbitrators did not keep within their jurisdiction and had exceeded their powers. This claim rests entirely upon the construction of the lease, which would confine the appraisers

to valuing the buildings according to reconstruction cost less deterioration. As I have before stated, there is no such restriction or provision in the lease. It merely requires the appraisers to value the building. It was upon this ground that the trial judge gave judgment for the plaintiffs. He adopted this construction of the lease and said that the appraisers had exceeded their authority. In his opinion he stated:

" It appears that the method by which this figure was arrived at was by finding the market value of the land and building together, then valuing the land alone and subtracting from the value of the land and building the value of the land. Obviously this was not what was contemplated by the provision of the lease that the building was to be valued ' in its then actual condition.'   *   *   * It seems to be well settled that if appraisers value property by a different rule from that which their authority requires them to apply, it is as much a departure from the matters submitted as to pass upon a matter not submitted."

No provision of this agreement, or lease, required the appraisers to apply the cost of reconstruction method of valuation. In this the trial justice was in error.

The difficulty of applying any one particular rule for valuation is evidenced by the testimony given in this case. Although insisting that the lease provided the rule of valuation, the counsel for the plaintiffs proceeded to introduce evidence under the other rule, in order to show the excessiveness of the award. The plaintiffs' witness, Hunter, an expert, testified that the building on the premises enhanced the value of the land to the extent of $2,000, at which time the court remarked, " The question of value is, how much this building at the time of the expiration of the lease enhanced the value of the land, and that is the only question here." The witness Horstman, another expert, testified for the plaintiffs that the land value was $9,500, and that the building added $2,000 to it. A witness named Ward, another real estate

expert for the plaintiffs, testified, " Q. What in your opinion was the value of this property at that time? A. $11,000.

" Q. Did you separate that as between land and building? A. I did.

" Q. How do you separate it? A. $9,000 value of the land and $2,000 value of the building."

Counsel for the plaintiffs was thus adopting the rule of valuation he objected to the appraisers using. To prove that the appraisers had exceeded their powers and made an excessive award, he fell into the very methods used by them.

That the appraisers adopted no rule which was unfair or improper is borne out by the testimony of the appraisers themselves. Gabler, the plaintiffs' appraiser, refused to join in the appraisal, so he says, because he did not interpret the lease as permitting him to value the land and building separately; he was a builder, but never considered himself a real estate expert. Toby, the defendant's appraiser, was also a builder, and he testifies that in making up his estimate, or appraisal, he not only adopted the method stated by the court's appointee, Brady, but he also estimated the cost of reconstruction less depreciation. To reproduce the building, he says, would cost $11,389. He allowed one-third for depreciation. This gave him in round figures $7,500 as the value of the building according to this rule. He agreed, however, to make the figure $7,000, to correspond with the estimate of Brady, arrived at according to the other method. Two expert builders testified for the defendant; one, named Munroe, said that it would cost $12,000 to reconstruct the building, and allowing one-third for depreciation, made its value $8,000; the other, Adams, figured reconstruction at $11,402, allowing 30 per cent for depreciation, found the value of the building to be $7,982.

Eliminating, therefore, any question regarding the powers and jurisdiction of the appraisers, there was nothing upon which to base a judgment for the plaintiffs'

setting aside the appraisal.   The trial judge may have believed the witnesses for the plaintiffs as to valuation, instead of the witnesses for the defendant; but the parties by the lease had submitted this question for final determination to appraisers, not to the courts.   A difference of opinion due to a conflict in testimony did not give jurisdiction to a court of equity to interfere with the award. As the appraisers had jurisdiction under our interpretation of the lease, their award must stand.

The judgment, therefore, of the Appellate Division and that of the Special Term should be reversed, and judgment ordered in favor of defendant upon his counterclaim for the relief therein demanded, with costs in all courts.   (*Masury* v. *Whiton, supra.*)

CARDOZO, Ch. J., POUND, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgment accordingly.