(No. 6378. September 17, 1937.)

THE STATE OF IDAHO, on Relation of G. E. McKELVEY, Commissioner of Public Works of the State of Idaho, Respondent, v. E. O. STYNER and HARRIET A. STYNER, Husband and Wife; HARRY FRAZIER and AGNES C. FRAZIER, Husband and Wife, et al., Appellants.

[72 Pac. (2d) 699.]

Guy W. Wolfe and J. H. Felton, for Appellants.

J. W. Taylor, Attorney General, Ariel L. Crowley and E. G. Elliott, Assistants Attorney General, W. A. Brodhead and Weldon Schimke, for Respondent.

GIVENS, J.—This action was instituted to condemn and secure by the exercise of the right of eminent domain certain real property belonging to appellants as a part and link in the Moscow-Troy highway known as National Recovery Secondary Project No. 190 (1935). The State and City of Moscow collaborated in connection therewith, the city to provide the funds to procure the right of way and maintain the portion thereof within the city limits; the State to reconstruct and surface the road.

The question of necessity and attendant questions as to the correctness of the judgment decreeing necessity, and the validity or invalidity of appeal therefrom, or scope in connection therewith in the present appeal, are disposed of by the stipulation as to paragraphs 5 and 6 of the complaint as follows:

"V.

"That the tracts or strips of land herein sought to be condemned are to be used for a right of way for laying out, building, constructing, improving, altering and extending one of the state highways of the State of Idaho; that the said highway is a part and link of the established highway system of the State of Idaho, known as the National Recovery Secondary Highway Project 190–A (1935), Moscow Troy Highway; that said highway is a portion of the federal and state highway system in the State of Idaho, and is to be used for travel by the general public; that the highway to be constructed upon said lands is necessary for the safety, convenience, and necessity of the general public; that the same will be a public highway, and the use thereof by the public will be a public use; that the lands sought herein to be condemned are required and are necessary for the laying out, construction and maintenance of such highway for such public use, and the taking of such lands and private property is necessary for such use, and such taking is for a public use, and that the plaintiff herein is in charge of the use for which the property hereinafter described is sought to be condemned.

"VI.

"That the location and survey of said highway as hereinafter described was made by or under the direction of the plaintiff herein, and that the same is located in such manner as will be most compatible with the greatest public good and the least private injury."

Stipulation:

"I.

"Agree that the allegations of Paragraphs .... V, VI, .... of the plaintiff's complaint are true; .... "

the stipulation reserving only one question for the court and one for the jury:

"It is further stipulated that the issue of the sufficiency and competency and materiality of said offer of purchase shall be decided by the judge of the court prior to the submission of the question of damages to the jury; that the only question to be submitted to the jury is as to the amount to which the defendants are entitled by reason of the taking of the defendants' property by virtue of the proceedings had in this cause, and that the defendants shall have the opening and closing at the trial thereof."

Appellants contend the city and not the State is the real party in interest and in effect that the State has no right to proceed herein because the money was paid or offered to be paid by the city and not by the State; that the city should be joined as a party plaintiff and that the city has exclusive jurisdiction and control over the highways within the city limits.

These contentions are all disposed of by the statute, sec. 39–2108, I. C. A., as amended by sec. 3 of chapter 4, Second Extraordinary Session of the 23d Legislature, 1935, page 9 at 11:

"39–2108. STATE HIGHWAYS—CONTRACTS WITH COUNTIES — HIGHWAY DISTRICTS — CITIES AND VILLAGES.—(3) The department of public works is authorized to enter into an agreement with the board of county commissioners of any county, the board of highway commissioners of any highway or good road district, the *board of trustees of any incorporated village or the city council of any incorporated city* through which a state highway is planned, to assume the maintenance of any existing *state* highway, or jointly to improve any existing *state* highway, or to construct a new *state* highway or any part or portion thereof, *subject to the provisions of Section 39–2107, Idaho Code Annotated.*

"(b) Right of way for any . . . . *state* highway to be improved, altered, or constructed by cooperation of the department of public works with any county, good road district . . . . highway district, *city or village* may be procured either at the time of, or after the making of such cooperative contract, by the department of public works, the county, the

highway district, . . . . good road district, *city or village,* jointly or severally.

"(c) The work on any *state* highway agreed to be improved or constructed jointly, shall be performed under the provisions of this chapter and under the supervision of the department of public works. . . . . " (*Village of Twin Falls v. Stubbs,* 15 Ida. 68, 96 Pac. 195; *Grangeville Highway District v. Ailshie,* 49 Ida. 603, 290 Pac. 717.)

While mention is made by appellants that in some way this statute or action by the State with the city is unconstitutional, they neither cite authorities nor present meritorious argument in support thereof on a statute like the above.

Appellants also assert there was neither proper allegation nor proof that prior to the condemnation proceedings respondent made a *bona fide* attempt to settle with appellants. Paragraph 7 of the complaint is as follows:

"That the defendants E. O. Styner, Harriett A. Styner, Harry Frazier and Agnes C. Frazier are the owners of Lots One (1) Two (2) and Three (3) of Block Seventeen (17) of Sunnyside Addition to the City of Moscow, Latah County, Idaho, and are known to plaintiff; That the defendants Grace Hartwell, Wakefield Hartwell, and Blondell E. Groseclose are the owners of Lots Two (2), Three (3), Four (4), and Five (5) of Block Nineteen (19) of Sunnyside Addition to the City of Moscow, Latah County, Idaho; That the defendants Charles M. Jester and Nellie Jester are the owners of the Northeast Quarter of the Southwest Quarter (NE¼ S.W¼) of Section Seventeen (17), Township Thirty-nine (39) North, Range Five (5) West, Boise Meridian, in Latah County, Idaho; that the plaintiff herein, the State of Idaho, by and through G. E. McKelvey, Commissioner of Public Works of the State of Idaho, prior to the commencement of this action, sought in good faith to purchase from said defendants the strips or tracts of land hereinafter described, so sought to be taken by the plaintiff for the right of way of such state highway to be constructed on, over and across the same, and to settle with the defendants who are the owners and claimants thereof, for the damages which might result to their property for the taking thereof for said right of way, and that

the plaintiff was unable to make any reasonable bargain therefor, or to make any settlement for the damages to the property of said owners and claimants, and the said owners and claimants have refused and still refuse to sell or convey an easement over and upon said strips or tracts of land, or to settle for the damages that might result to their property by reason of such easement for the right of way aforesaid.''

The stipulation in connection therewith was as follows:

''Agree that the allegations of Paragraph VII of the complaint are true, except the allegation therein that plaintiff 'prior to the commencement of this action, sought in good faith to purchase from said defendants the strips or tracts of land hereinafter described, so sought to be taken by the plaintiff for the right of way of such state highway to be constructed on, over and across the same, and to settle with the defendants who are the owners and claimants thereof, for the damages which might result to their property for the taking thereof for said right of way, and that the plaintiff was unable to make any reasonable bargain therefor, or to make any settlement for the damages to the property of said owners and claimants, and the said owners and claimants have refused and still refuse to sell or convey an easement over and upon said strips or tracts of land, or to settle for the damages which might result to their property by reason of such easement for the right of way aforesaid,' and in regard to said allegation the facts are as follows:

''It is agreed that on or about the 25th day of October, 1934, the plaintiff, acting by and through the Commissioner of Public Works, opened negotiations with the City of Moscow, whereby, among other things, it was proposed that all right of way required for the improvement of said Moscow-Troy Highway within the corporate limits shall be acquired and furnished by and at the sole expense of the City; that pursuant to said negotiations the City, on the 3rd day of June, 1935, duly adopted a resolution providing among other things as follows:

'' 'That all right of way required for the improvement within the corporate limits shall be acquired and furnished by and at the sole expense of the City.'

that pursuant to said negotiations, the City of Moscow, through its City Attorney, made to the defendants, E. O. Styner and Harry Frazier, the following offer:

'May 18, 1935.

'Messrs. E. O. Styner and Harry Frazier
 'c/o Moscow Machine Shop
 'Moscow, Idaho
'Gentlemen:

'As you are no doubt aware, it is necessary for the City of Moscow to acquire, either by purchase or eminent domain proceedings, certain land owned by you for the new Moscow-Troy Highway, known as N.R.S. 190–1935.

'The City of Moscow hereby offers you the sum of Two Hundred Fifty Dollars ($250.00) for the necessary right of way across your land. The land over which we require a perpetual easement is more particularly described as follows:

'Those portions of Lots one, two, and three of Block Seventeen of Sunnyside Addition to the City of Moscow now staked off upon your premises.

'This offer does not include any collateral agreement to improve side streets or to move any building or buildings owned by you which are within the proposed right of way.

'Very truly yours,
'WELDON SCHIMKE,
'WELDON SCHIMKE,
'City Attorney.'

"That said offer was authorized by plaintiff to be made for its use and benefit, and is the only offer made to the said defendants for the purchase of the property of the defendants for said easement; that said offer was refused by said defendants and defendants made no counter offer or demand except as shown by their answer in this cause filed."

There is no evidence that such offer was not made in good faith and in view of the statute, and the negotiations between the city and the State the pleading and proof was sufficient (20 C. J. 892; sec. 317; 20 C. J. 895, sec. 318); and appellants have cited no effective authorities to the contrary.

Appellants urge the court erroneously rejected their offer to show the structural and reproduction costs and value

of the building on the land as entering into the ultimate market value of the entire property. While there is some conflict, the weight of authority, both by reasoning and number is that such evidence is admissible. The leading case to unequivocally approve this doctrine is *Re City of New York, Blackwell's (Island Bridge Approach)*, 198 N. Y. 84, 91 N. E. 278, 41 L. R. A., N. S., 411, 139 Am. St. 791. The statement of this proposition being cogently expressed:

" . . . . All proceedings prosecuted under the right of eminent domain are based upon two fundamental facts. The first is that the owner's land is taken from him theoretically against his will, and the second is that the owner is, not permitted to fix his own price, but must be content with just compensation. The latter is a burden to which the owner must submit, but it is also a right which he may enforce. What is just compensation? In some cases the value of expensive structures may not enhance the value of the land at all. An extremely valuable piece of land may have upon it cheap structures, which are a detriment rather than an improvement. A man may build an expensive mansion upon a barren waste, and, in such a case, the costly building may add little or nothing to the total value. In the greater number of cases, however, when the character of the structures is well adapted to the kind of land upon which they are erected, the value of the buildings does enhance the value of the land. In such cases it is true that the value of the land as enhanced by the value of the structures is the total value, which must be the measure of the owner's just compensation when his property is condemned for public use. As to that general proposition there can be no disagreement. But how is the enhancement of the land by the structures which it bears to be proved? If all buildings were alike, the rule laid down by the Appellate Division would be one of convenient and universal application. It is common knowledge, however, that buildings not only differ from each other in design, arrangement, and structure, but that many which are externally similar and are situate upon adjoining lands, are essentially different in the quality and finish of the materials used and in the character of the workmanship employed upon them.

It must follow that such differences contribute in varying degrees to the enhancement in the value of the land, and we can think of no way in which they can be legally proved except by resort to testimony of structural value, which is but another name for cost of reproduction, after making proper deductions for wear and tear. This may be by no means a conclusive test as to the market value of premises condemned for public use. But that is not the question at issue. The question is whether evidence of structural value is competent to show market value, when the buildings are suitable to the land. There are instances, of course, when precisely similar buildings upon identical parcels of land may have the same quotential market value, just as the price of commodities like cotton, flour, or potatoes is regulated by the law of supply and demand, without reference to cost of production in particular cases. When that is true, the market value may be the value of the land as enhanced by the value of the buildings, without reference to structural value. But when a building has an intrinsic value, which must be added to the value of the land in order to ascertain the value of the whole, the owner may not be able to establish his just compensation unless he is permitted to prove the value of his land as land and the value of his buildings as structures. By adding to each other these two quantities the result is really the value of the land as enhanced by the buildings thereon. In valuing real estate for purposes of taxation the state resorts to the cost of improvements for the purpose of ascertaining the value of the land. *People ex rel. Cons. Gas. Co. v. Wells,* 54 Misc. 322, 105 N. Y. Supp. 1006, affirmed 126 App. Div. 944, 111 N. Y. Supp. 1135, and 193 N. Y. 614, 86 N. E. 1129; *People ex rel. Powers v. Kalbfleisch,* 25 App. Div. 432, 49 N. Y. Supp. 546, affirmed 156 N. Y. 678, 50 N. E. 1121; *People ex rel. New York Clearing House Bldg. Co. v. Barker,* 31 App. Div. 315, 51 N. Y. Supp. 1102, 53 N. Y. Supp. 111, affirmed 158 N. Y. 709, 53 N. E. 1130. By analogy it would seem that when the state compels a man to give up his land for public use, and permits him to recover, not what he thinks it is worth, but only its fair market value, he should at least have the right

to prove every element that can fairly enter into the question of market value''

The following are supporting authorities: *In re Block Bounded By Ave. A. etc. City of New York,* 66 Misc. 488, 122 N. Y. Supp. 321; *People v. Cantor,* 120 Misc. 560, 199 N. Y. Supp. 173; *New York O. & W. Ry. Co. v. Livingston,* 206 App. Div. 589, 201 N. Y. Supp. 629; *In re North River Water Front,* 219 App. Div. 27, 219 N. Y. Supp. 353; *In re Port Byron-Weedsport State Highway,* 136 Misc. 148, 239 N. Y. Supp. 578; *In re Inwood Hill Park, in Borough of Manhattan,* 230 App. Div. 41, 243 N. Y. Supp. 63; *In re Smith St. Bridge in City of Rochester,* 234 App. Div. 583, 255 N. Y. Supp. 801; *In re Luzerne-Lake George County Highway No. 804,* 145 Misc. 736, 261 N. Y. Supp. 894; *Baltimore & O. R. Co. v. Bonafield's Heirs,* 79 W. Va. 287, 90 S. E. 868; *Levenson v. Boston Elevated Ry. Co.,* 191 Mass. 75, 77 N. E. 635 (1st case); *McGaw v. Mayor and City Council of Baltimore,* 131 Md. 430, 102 Atl. 544; *City of St. Louis v. St. Louis, I. M. & S. Ry. Co.,* 272 Mo. 80, 197 S. W. 107; *Hall v. City of Providence,* 45 R. I. 167, 121 Atl. 66; *Beals v. Inhabitants of Brookline,* 245 Mass. 20, 139 N. E. 492; *State v. Carpenter,* 126 Tex. 604, 89 S. W. (2d) 194, 979; *Commonwealth v. Begley,* 261 Ky. 812, 88 S. W. (2d) 920; *Applefield v. Mayor and City Council of Baltimore,* 134 Md. 528, 107 Atl. 347; *Campbell v. City of New Haven,* 101 Conn. 173, 125 Atl. 650; *Moore v. Eadie,* 245 N. Y. 166, 156 N. E. 653. The trial court erroneously rejected such testimony.

 This court early indicated the broadest latitude should be allowed in the admission of evidence to show value, quoting with approval from *Ranck v. Cedar Rapids,* 134 Iowa, 563, 111 N. W. 1027, as follows:

" 'Generally speaking the true rule seems to be to permit the proof of all the varied elements of value; that is, all the facts which the owner would properly and naturally press upon the attention of a buyer to whom he is negotiating a sale and all other facts which would naturally influence a person of ordinary prudence desiring to purchase. In this estimation, the owner is entitled to have the jury informed of all the capabilities of the property, as to the business or use,

if any, to which it has been devoted, and of any and every use to which it may reasonably be adapted or applied. And this rule includes the adaption and value of the property for any legitimate purpose or business, even though it has never been so used, and the owner has no present intention to devote it to such use.' '' (*Portneuf-Marsh Valley Irr. Co. v. Portneuf Irr. Co.*, 19 Ida. 483 at 489, 490, 114 Pac. 19.)

■ Appellants are correct in their contention that rental, position and accessibility of the property to the railroad, its most valuable use possible, and inability to secure other feasible warehouse locations are all admissible and to be considered in determining market value. (*Idaho etc. Ry. Co. v. Columbia etc. Synod,* 20 Ida. 568, 119 Pac. 60; *Idaho Farm Dev. Co. v. Brackett,* 36 Ida. 748, 213 Pac. 696; *In re Smith St. Bridge in City of Rochester, supra; In re Blackwell's Island Bridge in City of New York,* 118 App. Div. 272, 103 N. Y. Supp. 441; *In re Inwood Hill Park, in Borough of Manhattan, supra; In re Port Byron-Weedsport State Highway, supra; Ogden L. & I. Ry. Co. v. Jones,* 51 Utah, 62, 168 Pac. 548; *West Chicago Park Commrs. v. Boal,* 232 Ill. 248, 83 N. E. 824; *Bray v. Tardy,* 182 Ind. 98, 105 N. E. 772; *Kelchner v. Kansas City,* 86 Kan. 762, 121 Pac. 915; *Lincoln v. Commonwealth,* 164 Mass. 368, 41 N. E. 489; *Union Ry. Co. v. Hunton,* 114 Tenn. 609, 88 S. W. 182; *Seattle & M. R. Co. v. Roeder,* 30 Wash. 244, 70 Pac. 498, 94 Am. St. 864; 20 C. J. 987; *Ham v. Northern Pac. Ry. Co.,* 107 Wash. 378, 181 Pac. 898; *City of Chicago v. Koff,* 341 Ill. 520, 173 N. E. 666; *Welton v. Iowa State Highway Com.,* 211 Iowa, 625, 233 N. W. 876; *State v. Graham,* (Mo. App.) 74 S. W. (2d) 493; *State v. Hamer,* (Ind.) 199 N. E. 589; *State v. Carpenter,* 126 Tex. 604, 89 S. W. (2d) 194, 979; *Joint Highway Dist. No. 9 v. Ocean Shore R. Co.,* 128 Cal. App. 743, 18 Pac. (2d) 413; *City of Tulsa v. Creekmore,* 167 Okl. 298, 29 Pac. (2d) 101; *Baltimore & O. R. Co. v. Bonafield's Heirs, supra; Levenson v. Boston Elevated Ry. Co., supra; Union Elec. Light & Power Co. v. Snyder Estate Co.,* 65 Fed. (2d) 297.)

■■ The majority of the court are of the opinion that the price paid for the property by appellants when they purchased it from an estate in probate proceedings was inadmis-

sible because in the nature of a forced sale and not pertinent as proving market value. The writer of the opinion disagrees. The same situation obtains with regard to evidence of the amount of an assessment for general taxation purposes, the majority holding such evidence inadmissible.

The court and counsel by the ruling on this question:

"Q. Where is most of the traffic at the present time with reference to the main building of your business?

"Mr. BRODHEAD: If Your Honor please, this is immaterial and irrelevant.

"The COURT: Overruled.

"Mr. BRODHEAD: We object to that, because a property owner has no vested right in having traffic go by its door, and the Supreme Court has decided that very thing in a recent case.

"The COURT: That's right."

have misconceived the holding in *Powell v. McKelvey,* 56 Ida. 291, 53 Pac. (2d) 626. That case held that the lowering or changing of grade in front of property was not a taking of the adjoining property, but the location of property and the flow of traffic are always elements to be considered in determining the market value of the property if it is actually taken and expropriated by condemnation proceedings, and such evidence was improperly rejected.

The zoning ordinance restricting the use of surrounding property had a bearing upon the value thereof and should have been admitted. (*Los Angeles City High School Dist. v. Hyatt,* 79 Cal. App. 270, 249 Pac. 221; *City of Beverly Hills v. Anger,* 127 Cal. App. 223, 15 Pac. (2d) 867.)

Respondent's objections to the photograph of the building were not valid and should have been overruled. (22 C. J. 913, sec. 1115.)

This disposes of all appellants' material and substantial errors.

The judgment is reversed and the cause remanded for a new trial. Costs awarded to appellants.

Morgan, C. J., and Holden, Ailshie, and Budge, JJ., concur.

ON PETITION FOR REHEARING.

(October 26, 1937.)

GIVENS, J.— Respondent's petition for a rehearing contends that in reversing the judgment in this case appellants have been afforded redress which under the statute should only be granted on an appeal from a judgment on a verdict and the appeal herein is from the final order of condemnation, and that this decision is precedent for the review of issues after a judgment of condemnation has become final by failure to take an appeal therefrom. This conclusion and its use as a supporting premise for respondent's contention is incorrect in this: that no valid judgment of condemnation was ever entered because the correction of the mistake in the purported judgment of condemnation as made by respondent, the history thereof being contained in *State v. Styner*, 57 Ida. 144, 63 Pac. (2d) 152, was wrong. (*Wilcox v. Wells*, 5 Ida. 786, 51 Pac. 985; *Wyllie v. Kent*, 28 Ida. 16, 152 Pac. 194; *Donahoe v. Herrick*, 44 Ida. 560, 260 Pac. 150.)

 However, no good purpose would have been served by having the judgment sent back for correct reformation since there is now no dispute as to what the correct judgment should have been and only expense and delay would have resulted. Appellants however were mislead to their injury by the incorrect method of changing the judgment and respondent may not now take advantage thereof to the appellants' detriment. Because of this initial error on the part of respondent herein, the court has considered the judgment from which this appeal was taken and which correctly recited what should have been in the first judgment, as the final judgment for the purposes of this appeal. The condition of the record herein for which respondent was primarily responsible, is the reason for the decision herein.

Petition for rehearing denied.

Morgan, C. J., and Holden, Ailshie, and Budge, JJ., concur.