Mrs. Beatrice MARTIN et al., Appellants,

v.

The TEXAS & PACIFIC RAILWAY COMPANY, Appellee.

No. 15443.

Court of Civil Appeals of Texas. Dallas.

Oct. 3, 1958.

Gallagher, Francis, Bean, Wilson & Berry, Judson Francis and J. O. Bean, Dallas, for appellants.

Robertson, Jackson, Payne, Lancaster & Walker, and D. L. Case, Dallas, for appellee.

DIXON, Chief Justice.

Joseph N. Martin was fatally injured June 5, 1956, when struck by a railroad motor car on the tracks of the Texas & Pacific Railway Company near the railroad's double track intersection with Loop 12 and the Dallas-Ft. Worth Toll Road. Suit for damages was instituted by appellant Beatrice Martin, deceased's widow, joined by deceased's grown sons and daughters.

A jury returned a verdict in which it found that both the Railway Company and Martin were guilty of negligence. On issues of discovered peril, the findings were against the Railway Company and in favor of deceased except as to one issue, No. 21, which issue was answered to the effect that the operator of the railroad motor car after discovering and realizing that deceased was in a position of peril, did not fail to use ordinary care in the use of all the means at hand to avoid hitting deceased. Based on this jury verdict judgment was rendered in favor of the Texas & Pacific Railway Company that appellants take nothing.

Many of the facts are undisputed. Deceased, 69 years of age at the time of his death, was employed by his sons, who operate Martin & Martin Foundation Drillers. They were engaged in construction work in connection with the overpass where the toll road passes over the double railroad tracks and Loop 12 west of the City of Dallas. The work had ceased at 12:00 o'clock that day. One of Martin's sons-in-law, Jones, was waiting to take him home in a pickup truck. Martin had his lunch kit in his hand and his coat over his arm. According to his son-in-law, Martin came up on the railroad right of way dump from the south side, crossed the south set of railroad tracks, walked straight east between the two sets of tracks for thirty or forty steps, then angled toward the north set of tracks, and finally stepped across the south rail of the north set of tracks into the path of the oncoming motor car. The railroad motor car, also traveling in an easterly direction, was moving behind Martin. Martin had taken one step over the south rail of the north set of tracks when the car hit him, knocking him down, and inflicting injuries which proved to be fatal. The accident occurred about 2:00 o'clock P.M.

In their first two points on appeal appellants contend that the elements of discovered peril were conclusively shown in deceased's favor as a matter of law, or were shown by the great weight and overwhelming preponderance of the evidence.

We are unable to agree with appellants. The operator of the railroad car testified that he was employed as a maintainer of signal equipment, was alone at the time traveling eastward, making his quarterly inspection of his territory. He was check-

ing the condition of wires and other equipment. He testified that the best way to check the signal equipment is to check to the rear of the motor car, which he was doing, though he was frequently glancing forward.

The car was on the north set of tracks traveling approximately ten to fifteen miles per hour. When the operator first saw him Martin was 250 to 300 yards away standing by one of the columns of the overpass. The next time the operator saw him Martin was in between the two rails of the south set of tracks about 100 feet from the car, walking eastward at a slight angle. The operator continued to watch deceased, saw him continue to angle across the tracks, so then the operator began to reduce his speed. However at this point the operator still did not consider that deceased was in any danger, for deceased was not in the path of the motor car. He soon was walking in the space, 13 feet wide, between the two sets of tracks. When the car was about 75 feet from deceased, the operator disengaged the belt which operated the car and started racing the motor. He did this to attract the attention of deceased, as the racing motor makes an "awful lot of noise". In his experience the operator had observed that such a noise will attract the attention of people 175 feet away, and can be heard within four hundred feet. When the car was about fifty feet from deceased, the operator began applying the brakes. As he approached Martin he slid the car wheels about 25 feet on the tracks. In addition to the foregoing actions the operator began "hollering" at deceased when he was about seventy-five feet away. At this time Martin was in between the two sets of tracks. The operator could have applied the brakes further back but says that when he "realized that the man might possibly walk in the path of the motor car I applied the brakes as hard as I could and I tried to stop; I done everything I could to stop."

In the face of the operator's testimony as above outlined which testimony the jury was entitled to consider and believe, we certainly cannot say that the evidence conclusively shows as a matter of law that appellee Railroad was liable under the rule of discovered peril. The operator did use certain means to avoid hitting deceased: he raced the car's motor thus making a loud noise, and he shouted warnings, and he applied the brakes in an effort to stop the motor car. Appellants emphasize the testimony to the effect that if the operator had applied his brakes sooner he might have avoided hitting deceased. This is obviously true, but, standing alone, it is not inconsistent with the jury's answer to Special Issue No. 21 where the jury found that *after he discovered and realized the perilous position of deceased, the operator did not fail to use ordinary care* in the use of all the means at hand to avoid hitting deceased.

Pertinent here is the holding in Tumlinson v. San Antonio Brewing Association, Tex.Civ.App., 170 S.W.2d 620, 622, and we quote from the opinion in that case: "It is not sufficient in itself to establish a party's liability under the doctrine, to demonstrate that had said party adopted a certain course of action, the injury or collision would not have occurred. Unless it can also be said that a person of ordinary prudence, under the same or similar circumstances, would have taken the action, liability under the doctrine does not attach. Despite various applications of the doctrine of discovered peril and rules similar thereto, the test of ordinary care as the measure of duty seems to be established without dissent."

Our Supreme Court has said that the conduct of one who, after discovering and realizing the peril of another, fails to use ordinary care to avoid injuring such person, is very nearly the equivalent, though it is not the exact equivalent, of deliberate and intentional misconduct. Whited v. Powell, 155 Tex. 210, 285 S.W.2d 364,

366. We certainly cannot say that as a matter of law the operator's conduct in this case amounted to such a lack of ordinary care as the Supreme Court described in the above cited case, or that the jury's answer to Special Issue No. 21 was against the great weight and preponderance of the evidence.

Appellants' first two points on appeal are overruled.

■ In their third point appellants contend that they were entitled to judgment based on the jury's answers to certain other issues as well as the issues relative to discovered peril. There is no merit to this contention. While it is true that the jury made findings of negligence against the railroad, it also found in answering Issue No. 23 that Martin was negligent in that he failed to keep a proper lookout. This latter finding is well supported by the evidence. The testimony is to the effect that deceased never looked back to see that the tracks were clear before starting to angle across the north set of tracks. Appellants' third point is overruled.

In their fourth point appellants contend that the judgment in favor of appellee was so against the overwhelming weight and preponderance of the evidence as to be clearly wrong. The evidence summarized in our discussion of appellants' first three points is sufficient to support the judgment. And there is other evidence further supporting the judgment. The fourth point is overruled.

■ In their fifth point appellants complain that the court committed fundamental error in unduly restricting the jury argument of their counsel. We gather from the record that counsel for appellants sought to argue to the jury that it was reasonable to assume that deceased looked backward down the south set of tracks and that it was on the right, not the left, set of tracks that he would expect the car to approach in keeping with the practice in this country of operating vehicles on the right side. Appellants' counsel also stated to the jury that if "they had brought that book of rules it would probably have shown * * * that they ought to drive that vehicle on the right track and not on the left track". Appellee's counsel objected on the ground that there was no evidence showing any custom of operating trains in any direction on any tracks, and that the only evidence was that trains and vehicles might go in either direction on either tracks at any time. The rule book referred to by counsel was not in evidence.

We must overrule appellants' fifth point for these reasons: (1) The objection offered by appellee's counsel was good, and should have been sustained. (2) If there was error in sustaining the objection, it was not fundamental error. Ramsey v. Dunlop, 146 Tex. 196; 205 S.W.2d 979 (Syl. 8): (3) The court's rulings on objections to argument of counsel were not preserved and brought forward by bills of exceptions. Pritchett v. Highway Insurance Underwriters, Tex., 309 S.W.2d 46, 50. (4) From a reading of the statement of facts it seems that the court did not actually rule one way or the other on the objections, but merely instructed the jury to be guided by the evidence in the case. This was not sufficient. It was the duty of appellants to press the matter to the point of procuring a ruling. Having failed to do so they will not be heard to complain on appeal. Texas & Pacific Ry. Co. v. Hagenloh, Tex.Civ. App., 241 S.W.2d 669, 679, affirmed 151 Tex. 191, 247 S.W.2d 236; Texas & Pacific Ry. Co. v. Mix, Tex.Civ.App., 193 S.W.2d 542, 547. (5) There is no showing of probable harm. Appellants' counsel later made substantially the same argument though in somewhat different words, and the argument was not objected to, or interrupted.

Appellants' fifth point is overruled.

■ Appellants' sixth point is as follows: "The Trial Court erred in unduly restricting Plaintiffs evidence on damages."

In their brief appellants say that the above point is germane to paragraph one of their motion for new trial, which paragraph is as follows: "The Court erred in unduly restricting testimony on damages in that the Court refused to let Mrs. Beatrice Martin testify about the amount of income derived from rent property which she and her late husband purchased and owned and which her husband operated and maintained and kept in repair before his death."

In the statement in their brief under this point appellants complain of two rulings of the trial court. Here are proceedings involving the two rulings:

"Q. Now, will you tell us what he made from his work and from his rent property, and divide it, so the jury will know, during the year 1956.

"Mr. Case: If the court please, I object to the income from the rent property, unless it is shown that that has been lost as a result of this accident.

"The Court: The objection will be sustained. * * *

"Q. All right, now, what amount of income did he pay taxes on in the year 1955?

"Mr. Case: Now, if the court please, I object to anything—including anything other than the earnings from his own labor.

"The Court: Yes.

"Q. Well, it does include rent, doesn't it? A. Yes, sir.

"The Court: Well, the objection will be sustained to that."

We think that appellants' sixth point is without merit for these reasons: (1) appellant did not except to the court's ruling sustaining appellee's objections in either instance; (2) no bills of exceptions were brought forward showing what the answers of the witness would have been had the objection not been sustained. Mollinary v. Karam, Tex.Civ.App., 257 S.W.2d 886; (3) there is evidence that Mrs. Martin has sold a house trailer which during Mr. Martin's life time was rented, and that she now rents their home; no other changes in rentals are shown, consequently, applying the measure of damages laid down in Hemsell v. Summers, Tex.Civ.App., 138 S.W.2d 865, 868, we can see no harm resulting to appellants from the court's rulings; and (4) the excluded evidence related to damages only and because of the jury's adverse answers to issues having to do with liability, appellants were precluded from recovering any damages. The sixth point is overruled.

■ ■ Appellants' seventh point asserts error because of jury misconduct. We gather from appellants' written argument that their contention is that the jury after answering Special Issue No. 21 "yes", changed their answers to "no" because one or two of the jurors stated that "We ought not to put all the blame on the railroad" and "we changed this answer to 'no' when somebody said that Mr. Martin was partly to blame for not looking * * *."

There is a conflict in the testimony of the jurors at the hearing on the motion for new trial. W. E. Myers, one of the jurors, testified that the answers to Issue No. 21 was "no" from the first and was not changed. He also denied that anyone said that the issue should be answered "no" because the jury had already agreed that the operator of the motor car had failed to keep a proper lookout. He did not remember the other statement having been made.

Mrs. Francis J. Wolf, a juror, testified that someone said that " * * * we have found both of them did not keep a proper lookout, and if we answer 21 yes, that will put all the blame on the railroad." In answering the questions, the jury skipped about a great deal. They would answer some of the questions, then come back because the questions were confusing. She was of the opinion based on the evidence

that the operator of the motor car used all the precautions he had at hand. The jury were of the opinion that both were to blame, that the railroad was not all to blame, and they did not want to put all the blame on the railroad by answering "yes" to Issue No. 21.

There was testimony that the foreman first wrote down tentative answers with a pencil, but that after considerable skipping about, much discussion, and several changes in the tentative answers, the answers, as finally agreed by all the jurors, were written in ink and the verdict returned into court.

In the face of the conflicts in the evidence the trial court's finding as to misconduct is final. Martin v. Shell Oil Co., Tex.Civ. App., 262 S.W.2d 564, 566. It was not misconduct for the jury to enter into a general discussion as to which party may have been at fault. Fisher v. Leach, Tex.Civ.App., 221 S.W.2d 384, 394. Our Supreme Court has held in Ford v. Carpenter, 147 Tex. 447, 216 S.W.2d 558 that to constitute misconduct there must be an agreement in advance as to which party the jury wanted to find for, and thereafter an attempt to answer the issues with a view to bring about such result. We found no evidence in the record that such was the situation here. Moreover we cannot say that appellants were harmed by the discussions of the jurors even if we were to accept appellants' contention that misconduct occurred. Rules 327 and 434 Texas Rules of Civil Procedure. Appellants' seventh point is overruled.

In their eighth point appellants say that the court unduly restricted their evidence about jury misconduct. The record does not support appellants' claim. Again appellants have not brought forward any bills of exceptions showing what questions and what answers were excluded or restricted. Mollinary v. Karam, supra. The Statement of Facts discloses appellants were in possession of an affidavit previously made by juror Mrs. Doris Burroughs, though the contents of the affidavit are not shown. With reference to the affidavit the following proceedings were had:

"Your Honor, I know this lady—I want to get this affidavit into evidence, in the record, because I feel Your Honor is unduly restricting our inquiry and I want this just in evidence for the purpose of the record that goes up.

"Mr. Case: Now, if the court please, I object to receiving the affidavit in evidence. The juror is here in person. * * *

"The Court: The objection is sustained.

"Mr. Francis: We can't introduce the affidavit?

"The Court: No. * * *

"The Court: For what purpose do you offer it?

"Mr. Bean: Because it shows what the juror's testimony would be if we were not restricted in our inquiry."

Appellants did not except to the court's ruling. Anyway we are of the opinion that the affidavit was not admissible under the circumstances, and the court properly sustained appellee's objection. Appellants' eighth point is overruled.

The judgment of the trial court is affirmed.

Affirmed.