**STATE of Texas, Appellant,**

v.

**H. M. SIDES et ux., Appellees.**

No. 15838.

Court of Civil Appeals of Texas.

Dallas.

July 7, 1961.

Rehearing Denied July 28, 1961.

Will Wilson, Atty. Gen., H. Grady Chandler, John B. Webster, Z. J. Turlington and W. Ray Scruggs, Asst. Attys. Gen., for appellant.

Clyde Elliott, Jr., Canton, for appellees.

DIXON, Chief Justice.

This is an appeal by the State of Texas from a judgment based on a jury verdict for $17,153 in a condemnation suit wherein the State on August 12, 1959 took 33.83 acres of appellees' land for right-of-way for Interstate Highway 20. Special Commissioners appointed by the County Judge had made an award of $4,085.

The 33.83 acres were part of a farm of approximately 280 acres owned and occupied by Henry W. Sides and wife located about a mile and a half north of Canton, Texas in Van Zandt County. As a result of the taking the remaining of Sides' farm, consisting of 245.82 acres, was divided so that one tract of 96.41 acres was left on the north side of the highway and another tract of 149.41 acres was left on the south side of the highway. The latter tract is itself divided by State Highway No. 19 into two parts, one part consisting of 45.48 acres, the other of 109.93 acres. Thus the present taking leaves the Sides' farm divided into three separate parcels of land.

By agreement of the parties all issues were eliminated from the controversy except the question of the market value of the property taken and the damage to the remainder.

Eight witnesses testified as to property values. They testified as follows:

| Witness | Value of 33.83 acres taken | Value of remainder before taking | Value of remainder after taking | Total damages. |
|---|---|---|---|---|
| Irby Mills | $8500 | $60,000 | $30,000 | $38,500 |
| Lester Cox | 6766 ($200 per acre) | 49,000 (200 per acre) | 24,500 (100 per acre) | 31,266 |
| J. H. Phillips | 6766 | 49,000 (200 per acre) | 24,500 (100 per acre) | 31,266 |
| W. B. Phillips | 6766 | 49,000 (200 per acre) | 24,500 (100 per acre) | 31,266 |
| Sam Hilliard | 6766 | 49,000 (200 per acre) | 24,500 (100 per acre) | 31,266 |
| Appellee Henry Sides | 6766 | 49,000 (200 per acre) | 24,500 (100 per acre) | 31,266 |
| T. N. Winn | 2414 (70 per acre) | 26,136 | 23,811 | 4,739 |
| Robert Crow | 2758 | 29,174 | 27,720 | 4,212 |

Of the above named witnesses the first six testified in behalf of appellee Sides; the last two in behalf of the State.

In its first three points on appeal appellant asserts that it was error to permit appellees' witnesses J. H. Phillips, W. B. Phillips and Sam Hilliard to give their opinion of the market value of the subject property over appellant's objection that the witnesses were not shown to be competent to testify.

J. H. Phillips, 55 years of age at the time of the trial, owned a farm located about a mile from the Sides' property. He had lived in the area all his life. He was well acquainted with the Sides' place. He had never appraised land. He had never sold any land. He had not bought any land in 1958 or 1959. Phillips was asked whether he thought he had an opinion as to the cash market value of the land taken on August 12, 1959. To this question he answered: "I think so." Being asked what in his mind is "market value" he answered: "Whatever you could sell anything for and anybody is willing to give you for it." Then followed these questions and answers:

"Q. All right, sir. Now, you said you had an opinion as to what the market value of the 33.83 acres that they were taking through the middle of this place was on August 12, 1959? A. Yes, sir.

"Q. In your opinion, what was that 33.83 acres worth? * * * A. I would say $200.00 an acre.

"Q. Do you have an opinion as to what this other land on either side of that thing is worth, that 245 acres that is left? A. Before the highway goes through it?

"Q. Yes, sir? A. The same price as the other, $200.00 an acre. * * *

Q. After that highway goes through there, on August 12, 1959, in your opinion, what is the cash market value of the 245 acres that is left? A. I would say it would cut it in half, to about $100.00 an acre."

W. B. Phillips, 58 years of age, a brother J. H. Phillips, lives on a farm where he was born, the farm being located about two miles north of Canton. He never bought or sold any real estate in Van Zandt County. He never made an appraisal, and didn't know whether he would know how to start one. He had known Sides and the Sides' property for 40 years, but had not been on it lately, and didn't have the least idea how many acres Sides had. We quote from his testimony:

"Q. * * * do you have an opinion as that—based on your experience in that community * * * as to what the market value of this 33.83 acres was on August 12, 1959? A. Yes, I figure it worth $200.00 an acre. * * *

"Q. Do you know what market value is? A. Yes, I figure land is worth $200.00 an acre.

"Q. Do you know what 'market value' is—what we mean when we say 'market value' do you think you know what that means? A. I don't guess I do.

"Q. You don't know what the market value of a piece of land would be? A. Yes.

"Q. You say you have an opinion, what do you mean when you say 'market value'? A. You mean how much an acre?

"Q. No, what is your idea of market value, just that term be? A. I would figure just whatever it was selling for, whatever you could sell it for —the selling value of anything.

"Q. All right, sir, now you stated that you had an opinion of the value of 33.83 acres of land on August 12, 1959, that it was worth $200.00 an

acre, do you have an opinion as to what the value of this 245 acres is on either side of that Interstate Highway 20? A. I would figure $200.00 an acre * * *

"Q. Considering the damage that he will have to this up here and this down here, 245 acres, what do you figure the value of that will be after the highway goes through there, considering the damages to the rest of it? A. I figure it would be $100.00 acre after it is run through there. * * *

"Q. What preparation did you make to come here and testify, Mr. Phillips? A. We are just neighbors out there, and I always like to help my neighbors.

"Q. You figure when you come up here and testify you are *accomodating* Mr. Sides? A. I thought I would be. I may not be.

"Q. But you intended to anyhow, didn't you? A. Yes, sir. That is right. * * *

"Q. Now on what basis did you determine the market value of this property, did you base it on anything at all, or is it just your opinion, off-hand opinion, curbstone opinion, so to speak, is that all you are testifying to, isn't that correct—did you go in and check what other property is selling for? A. Well, it is good land, and there has been a lot of land, I say some, sold for $200.00 an acre.

"Q. Do you know that? A. Yes, my daddy-in-law bought a little old ten acre tract up there and gave $200.-00 an acre for it. That is the only one I know for certain.

"Q. You have had no experience though at all, in trading property, have you? A. No."

Sam Hilliard, 44 years of age, was in the mercantile business in Canton at the time of the trial. He was also Mayor of Canton. He had lived in Van Zandt County all his life. He owns land near and knows the Sides property. It has good bottom land on it. He has dealt in real estate, was and is familiar with real estate values. He had an opinion as to value of land in that community. He never made a real estate appraisal. We quote from his testimony:

"Mr. Elliott: I am just asking him if he has an opinion as to market value of that neighborhood; 'yes' or 'no'?

"The Witness: Yes, sir.

"Q. Mr. Hilliard, do you know what the market value is? A. Yes, sir.

"Q. What is it? A. Market value is what you can get for anything of a person wanting to buy it without any person being under any duress either to buy or sell. * * *

"Q. Yes, sir. Now, there is 33.83 acres that is being taken there, Mr. Hilliard, as shown by this map; do you have an opinion as to what the market value of that 33.83 acres was on August 12, 1959, at the time it was taken? A. I do. * * *

"Q. In your opinion on August 20, 1959, what was the value of that 33.83 acres? A. In my opinion that land would be worth $200.00 an acre.

"Q. Do you also have an opinion, Mr. Hilliard, as to what the value of this other land was on either side of it before the Highway went through. The 245 acres that is left? A. Yes.

"Q. In your opinion, what was the value of that 245 acres before the Highway Department went through on August 12, 1959? A. It would be the same.

"Q. $200.00 an acres? A. $200.00 an acre. * * *

"Q. Now, Mr. Hilliard, you have· stated your reasons for thinking this 245 acres is damaged do you have an opinion as to what the market value of this 245 acres will be immediately after this highway goes through there? A. You mean after the highway goes through here what will this be worth here, as far as the pasture land?

"Q. Yes; on August 12, 1959. A. It will reduce it about half value."

A witness need not be an expert in a technical sense in order for his opinion as to values to be received. Leyendecker v. Rau, Tex.Civ.App., 290 S.W.2d 262. However, he must possess (1) a knowledge of the value standards of the class of property to which the subject property belongs. In this connection (a) he must have a knowledge of market value (b) in the vicinity of the subject property (c) based in part at least on personal observation and not solely on hearsay. And (2) the witness must have a knowledge of the particular property to be valued though in some instances it is not necessary that the witness have seen the property, as the factual information may in some instances be supplied by a hypothetical question. McCormick & Ray, "Texas Law of Evidence," Vol. 2, pp. 257–261, 2d Ed., and cases there cited.

As to the establishment of the qualification, the witness's own statement that he knows the land in question and is acquainted with the market value is sufficient to authorize the reception of his testimony as to value in the absence of a request for voir dire examination to test his qualification. Leyendecker v. Rau, supra; City of Teague v. Stiles, Tex.Civ.App., 263 S.W.2d 623; McCormick & Ray "Texas Law of Evidence" Vol. 2, pp. 260–261.

Applying the above principles to this case it is our opinion that the witnesses J. H. Phillips and Sam Hilliard were qualified to testify as to the market value of the land taken and of the land remaining.

It is true that in some of the questions propounded to the witnesses the words "worth" and "value" were sometimes carelessly used instead of the term "market value", but the introductory questions did refer to the market value and it seems plain to us that both witnesses and counsel thereafter were referring to market value when they used less accurate terms.

The testimony of W. B. Phillips presents greater difficulty. He stated that he did have an opinion as to the market value of the land in question and that it was $200 per acre. However he later stated that he had not seen the land lately, had no idea how many acres Sides had, and that he was testifying because he liked to help his neighbors and wanted to accommodate Sides. If a motion had been made to strike his testimony it probably would have been proper to sustain the motion. But no such motion was offered. Under the circumstances we cannot say that the reception of his evidence constituted reversible error.

Appellant did not ask to take these witnesses, except Hilliard, on voir dire examination to test their qualifications. Appellant did not present motions to strike their testimony. Moreover, three other witnesses whose qualifications are not challenged gave testimony as to market value as high or higher than the values testified to by J. H. Phillips, W. B. Phillips and Sam Hilliard. We cannot say that the reception of their testimony as to values, even if we were to hold it was error, was calculated to cause and probably did cause an improper judgment. Rule 434, Texas Rules of Civil Procedure. If it was error, it was harmless error.

Appellant's first three points are overruled.

In its fourth point appellant asserts that improper argument in the form of an improper appeal to local prejudice, repeated by appellees' attorney three times in defiance of the rulings and admonitions of

the court, were designed and reasonably calculated to cause and probably did cause an enlargement of the jury verdict beyond the consideration of the market value.

During the jury argument the attorney for appellees made this argument "Now Gentlemen I want you to consider for a minute the type of highway that is being constructed across Mr. Sides' home. This is a super-highway that is designed to miss every town in Van Zandt County. It is a super-highway that runs from the Pacific Coast to the * * *." At this point appellant objected and the court instructed the jury not to consider "the question of designing it that way."

The counsel for appellees said: "All right, this six-lane super-speed track that they are building across Van Zandt County accidently misses every town in Van Zandt County. That highway does not touch Wills Point, Edgewood, Fruitvale, Grand Saline, Canton, Van, Martin's Mill or any other town in this County." At this point appellant again objected and the court said: "I'll ask counsel to be careful."

Thereupon counsel for appellees continued his argument: "Your Honor, counsel will try. That highway is a highway that will take all the people from the other side of Van Zandt County and get them just as quick as it can all the way across Van Zandt County and into Louisiana. That highway is not built for our purposes; we got good highways in this County, we got good roads all over this County." Here appellant again objected and stated that if appellees' counsel persisted in making the statements, appellant would have to request the court to excuse the jury and appellant might have a motion to make. In response the court addressing appellees' counsel said: "Go ahead with your speech."

Appellees seek to justify the argument on the ground that it was based on the evidence. The record discloses that Earl Shaw, a witness for appellant and an engineer employed by the State Highway Department, testified on cross-examination that the highway goes from the east coast to the west coast and does not touch a town in Van Zandt County. This testimony was admitted without objection.

■ Nevertheless, the argument of appellees' attorney was improper. It was obviously an appeal to local prejudice. Our Supreme Court has condemned such argument. Smerke v. Office Equipment Company of Texas, 138 Tex. 236, 158 S.W. 2d 302. And the error was made worse by counsel repeating the argument. Houseman v. De Cuir, 155 Tex. 127, 283 S.W.2d 732, 735; Southwestern Greyhound Lines v. Dickson, Tex.Civ.App., 219 S.W.2d 592; Texas Cab Company v. Patton, Tex.Civ. App., 125 S.W.2d 411.

However, we do not believe that the argument, improper though it was, requires a reversal of the judgment. In the last two of the instances objected to, appellant did not obtain a ruling from the court. The court merely admonished counsel in one instance to be careful and told counsel in the other instance to go ahead with his speech. Counsel should have insisted on a ruling from the court. In the absence of a ruling from the trial court, appellant does not have a basis on which to predicate the point of error. Martin v. Texas & Pacific Ry. Co., Tex.Civ.App., 317 S.W.2d 577, 581; Texas Livestock Marketing Ass'n v. Rogers, Tex.Civ.App., 244 S.W.2d 859, 864; Texas & Pacific Ry. Co. v. Hagenloh, Tex. Civ.App., 241 S.W.2d 669, 679; 3 Tex.Jur. 2d 438–439.

Moreover, though the argument was undoubtedly improper, we cannot say that it probably caused an improper verdict or judgment in this case. Rule 434, T.R.C.P. In view of the record as a whole we are of the opinion that the improper argument was harmless error. Appellant's fourth is overruled.

■ In its fifth to ninth points inclusive, appellant alleges error in permitting appellees' witness Irby Mills to testify concern-

ing sales of other pieces of property in support of his opinion as to the market value of land taken and of the remainder.

The qualifications of Mills as an expert witness are not questioned by appellant on this appeal. He is a native of Van Zandt County, and is in the real estate and insurance business; was formerly cashier of a Canton Bank; at one time in retail lumber business; for six years employed in Tax Assessor & Collector's Office; was reared on a farm; had inspected appellees' land to determine its market value; had known Sides' land since 1923; once owned 63 acres less than a mile from Sides' land; in connection with his business has tried to keep up with land that is actually sold; checks records.

Mills testified that based on "information of and examination of other properties sold in the last two years around Canton, and on his examination of this land * * *"; and based on his "checking around the neighborhood and so forth * * *"; he had arrived at an opinion as to the market value of the Sides' land on August 12, 1959. He testified the market value of the land taken was $8,500; the market value of the remainder before the taking was $60,000; after the taking $30,000—total damages $38,500.

The five allegedly comparable sales concerning which Mills testified involved tracts of farm lands varying in size from 7 acres to 283 acres. Three of the tracts were about a mile from the Sides' property, one was about a mile and a half, and one was about three and a half miles. One tract of 50 acres sold for $10,000 ($200 per acre); a tract of 283 acres sold for $42,000 ($105 per acre); a tract of 36 acres sold for $8,-500 ($200 per acre); and a tract of 23.97 acres sold for $7,500 ($312 per acre). Mills testified to some similarities between the Sides' land and the above tracts, but his testimony, both on direct and cross-examination, also disclosed points of considerable dissimilarity in some instances.

In only one instance did appellant seek to examine Mills on voir dire, and in that instance the examination was with refer-

ence to Mills' qualification as a witness, not with reference to comparable sales.

Appellant introduced rebuttal testimony in which one of its witnesses testified that he had examined four of the pieces of property concerning which Mills had testified. In some detail he pointed wherein the properties sold were not, in his opinion, sufficiently similar to serve as comparable sales.

We shall not go into a lengthy delineation of the similarities and dissimilarities of the five pieces of property compared to Sides' property as brought out in the evidence.

Under the circumstances we must hold that it was not reversible error to receive Mills' testimony as to the five sales of other properties on which sales he in part based his opinion as to the market value of the Sides' property.

In reaching this conclusion, among other considerations we have borne in mind the difference between (1) comparable sales as independent, substantive evidence of the value of the property to which the comparison relates, and (2) alleged comparable sales which are testified to by an expert as part of the account of the factual basis and considerations upon which he founds his opinion as to the market value of the real estate in controversy. This difference is explained in detail by former Associate Justice Thomas of this Court in Hays v. State, Tex.Civ.App., 342 S.W.2d 167 at pages 170–174. We shall not prolong this opinion by a repetition of the excellent discussion by Judge Thomas.

In this case the testimony of Mills comes within the category of (2) above. The record shows that Mills' qualifications as an expert were developed on direct and on voir dire examination. He was held to be qualified. Having thus qualified he was properly permitted to testify as to market value. The alleged weakness of his supporting facts and reasons, including comparable sales, goes to the weight of his testimony, not to its admissibility. The Court did not abuse its discretion in admitting the challenged testimony.

Furthermore, we cannot say that Mills' testimony of other sales of farm lands in the community was calculated to cause and probably did cause an improper judgment in this case. Rule 434, T.R.C.P. The similarities and dissimilarities of the five sales were thrashed out on direct and cross-examination of Mills, and in four instances in rebuttal testimony offered by appellant's experts. The jury heard all this testimony. Evidently the jury did not set any great store by Mills' opinion of market value, for the jury verdict was for considerably less than one-half the market value as testified to by Mills. Appellant's fifth to ninth points inclusive are overruled.

Appellant's tenth point is that the verdict and judgment for $17,153 are excessive. In support of its contention appellant emphasizes the fact that the amount of the judgment based on the verdict is approximately four times the amount awarded by the Special Commissioners. Of course, this fact, standing alone, could be used with equal force to argue that the Commissioners' award was far too low.

There is ample evidence to support the jury verdict and the judgment. In the first part of this opinion we show a table of values as testified to by eight witnesses. It will be seen that the verdict and judgment more or less split the difference between the highest values given and the lowest values given in the testimony. However, if we average the highest and lowest values, the verdict and judgment veer toward the side of appellant's values. For example:

|  | Part taken. | Damage to remainder. |
|---|---|---|
| T. N. Winn's testimony (low) | $2414 | $2325 |
| Mills' testimony (high) | 8500 | 30.000 |
| Total (high plus low) | $10,914 | $32,352 |
| Average (divide by 2) | 5,457 | 16,163 |
| Jury verdict | 5,074.50 | 12,079 |

Appellant's tenth point is overruled.

The judgment of the trial court is affirmed.