**TARRANT COUNTY WATER CONTROL & IMPROVEMENT DISTRICT NO. I, Appellant,**

v.

**Charlie HUBBARD et ux., et al., Appellees.**

**No. 320.**

Court of Civil Appeals of Texas.

Tyler.

March 14, 1968.

Rehearing Denied April 11, 1968.

Life & Bolding, Jack T. Life, Athens, Brown, Herman, Scott, Young & Dean,

Ardell M. Young, Fort Worth, for appellant.

Fields, Fields & Hardee, Robert H. Fields, Athens, for appellees.

MOORE, Justice.

Appellant, Tarrant County Water Control & Improvement District No. 1, a governmental agency and body politic, brought suit against appellees, Charlie Hubbard and wife, to condemn 53.46 acres of appellees' land for lake purposes. In the statement in condemnation filed with the County Judge of Henderson County, appellant alleged that it proposed to construct a lake in Henderson and Kaufman Counties, known as the Cedar Creek Reservoir, covering approximately 37,000 surface acres; that the lake was being constructed for the purpose of supplying water to the City of Fort Worth and other surrounding communities; and that in constructing the lake, it was necessary for appellant to acquire all land lying within the reservoir basin up to the elevation of 325 feet above sea level, with the exception, however, that the landowner was to have the right of joint use with appellant of all lands situated between 322 feet and 325 feet above sea level. The oil, gas and other minerals were also excepted from condemnation.

Appellant's statement in condemnation further alleged that the district had not been able to agree with appellees on the amount of damages and requested that special commissioners be appointed for the purpose of assessing appellees' damages.

Special commissioners were appointed by the County Judge and after notice to appellees, a hearing was held. On May 11, 1965, the special commissioners made their award in the amount of $8,019.00. Appellees, not being satisfied with the amount of damages awarded by the special commissioners, timely filed their objections to the award in the County Court of Henderson County, alleging that the damages assessed by the special commissioners did not represent the

fair reasonable value of the land taken, nor adequately compensate appellees for the damages caused to the remainder of their land. The pleading concluded with a prayer for trial de novo and for a determination of the damages. Appellant filed no pleading in response to appellees' objections to the award.

The cause proceeded to trial upon appellant's original statement in condemnation and upon appellees' objections to the award. Trial commenced on the 23rd day of January, 1967. The parties stipulated that all preliminary steps had been taken by the condemnor and condemnees and that the only issue before the court was the question of just compensation to the appellees. Based on such stipulation, appellees were permitted to open and close. On the second day of the trial, while appellees' first witness, Charlie Hubbard, was on the stand, counsel for appellant, during cross-examination, propounded certain questions to him by which appellant sought to have him admit that his property had not been damaged but had, in fact, been enhanced in value by reason of the construction of the lake. Counsel for appellees objected to any evidence of enhanced value or special benefits to appellees' remaining lands and filed the following motion in limine, alleging:

"That the plaintiff, the condemnor, should not be permitted to elicit or adduce testimony from any witnesses concerning any enhancement in value of defendants' remaining property involved in this suit, for the reason that if the construction of plaintiff's Cedar Creek Lake enhances any of defendants' land, such benefit is not special or peculiar to defendants' land, but to the public in general and to each of defendants' neighbors surrounding said Lake or near thereto, and, therefore, plaintiff is not entitled to show as set-off against defendants' damages to the remainder of defendants' land any such special benefits that might occur from said construction, and for the further reason that there is no pleadings of any special benefits or enhance-

ment in value of defendants' remaining land involved in this suit."

Prior to a ruling on the foregoing motion, counsel for appellant made it known to the court that appellant was seeking to prove that appellees' remaining land had received a special benefit as a result of the construction of the lake in that there were several thousand feet of property bordering on the shoreline of the lake above the 325 foot contour line, which made it suitable for residential and suburban development and as a result, appellees' remaining land had been benefited and had been substantially enhanced in value by reason of the taking.

The trial court sustained the appellees' motion in limine and instructed the appellant's counsel "not to elicit or adduce any testimony or evidence from any witness concerning said enhancement in value of defendants' remaining lands." Appellant then offered the following trial amendment:

"Plaintiff specifically denies that the Defendants have sustained any damage to their remaining lands by reason of the taking of the 53.46 acres for Cedar Creek Reservoir. In this connection Plaintiff would show that after the taking of said lands by the Plaintiff, Defendants' remaining lands, or, at least, a substantial portion thereof, will have many hundred feet of lakeshore property. That said remaining lands will be suitable for residential and suburban development purposes. By reason of the erection and completion of said Cedar Creek Reservoir Defendants' remaining lands will not be damaged, but on the contrary, will be substantially enhanced in value, and Defendants will not, in fact, suffer any damages to their remaining lands by reason of said taking, but will, in fact, be particularly and specially benefitted.

"WHEREFORE, Plaintiff TARRANT COUNTY WATER CONTROL & IMPROVEMENT DISTRICT NO. 1 respectfully requests leave of the Court

to file the above and foregoing trial amendment."

Appellees objected to the filing of the trial amendment on the ground that it came as a surprise and also on the ground that appellant had waived its right to amend their pleadings by failing to amend its pleadings seven days prior to trial as provided by Rule 63, Texas Rules of Civil Procedure.

The trial court refused to allow appellant to file the proffered trial amendment and throughout the remainder of the trial, the court adhered to its ruling and refused to allow the appellant to elicit or adduce any testimony or evidence from any witness concerning the enhancement in value of the defendants' remaining land. Appellant excepted to the ruling of the court and preserved the point by numerous bills of exception, showing that if permitted to testify, the witnesses offered by appellant would have testified that after the construction of the lake, appellees' remaining land would have several thousand feet of shoreline property which was above the elevation of 325 feet above sea level; that the highest and best use of such lands was for residential and suburban development purposes and as a result, appellees' remaining land received special benefits and was enhanced in value. While the trial court excluded evidence of special benefits, the court did permit appellant's witnesses to testify that appellees' remaining lands had not been damaged as a result of the construction of the lake.

At the conclusion of the evidence, the cause was submitted to the jury upon three special issues. In response to the first issue, the jury found that the reasonable cash market value of the land taken was $10,692.00, and in response to the second and third issues, the jury found that the value of the appellees' remaining land, exclusive of the tract condemned, immediately before the taking was $29,542.90 and that the market value of the remainder after the taking was $25,014.40.

Based upon the verdict, the trial court rendered judgment for appellees in the total sum and amount of $15,220.50. After its amended motion for new trial was overruled, appellant duly perfected this appeal.

Appellant's points 1 through 9 pertain to related matters, asserting first that the trial court erred in excluding the testimony of six witnesses offered by appellant for the purpose of showing appellees' remaining land had received special benefits, and second that the trial court erred in refusing to allow appellant to cross-examine appellees' witnesses with reference to such special benefits. Appellant maintains that evidence offered showing special benefits was admissible upon the general issue and therefore no pleading of special benefits or enhancement was required.

█ It is now well settled that where only a part of the landowner's land is taken and the residue of the land has received some special benefit resulting in some enhancement in the market value thereof, such enhancement in value is a legitimate offset to any damages thereto, but not to the value of the part actually taken. State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 979; Steele v. City of Anson (Tex.Civ. App.) 229 S.W.2d 948.

██ But, in order for the condemnor to claim recoupment of the damages by way of an offset, it has been consistently held that the condemnor must plead facts showing special benefits and enhancement in value to the remaining land, and in the absence of such pleading, evidence of special benefits is not admissible. Rule 94, Texas Rules of Civil Procedure; 22 Tex. Jur.2d, Sec. 188, page 296; Sec. 190, page 296, 297; Rayburn, Texas Law of Condemnation, Sec. 74(1), page 272; City of Dallas v. Cooper (Tex.Civ.App.), 34 S.W. 321; Haley v. State (Tex.Civ.App.), 406 S.W.2d 477, writ ref., n. r. e. Since the pleading failed to raise any issue of special benefits or enhancement, any evidence offered upon such issue would be immaterial and consequently inadmissible. It

therefore follows that the action of the trial court in refusing to allow appellant to offer such proof fails to reflect error. Appellant's points 1 through 9 are overruled.

By point 10, appellant says that even though such pleadings are required, the trial court erred in refusing to allow appellant to file a trial amendment alleging special benefits.

■ Under the circumstances presented here, we have concluded that the trial court did not abuse its discretion in refusing to allow appellant to file the trial amendment.

Rule 66, Texas Rules of Civil Procedure, provides in part, as follows:

"If evidence is objected to at the trial on the ground that it is not within the issues made by the pleading, * * * the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits. * * *"

■ In construing the foregoing provisions of the Rule, the Supreme Court of this state in the case of Westinghouse Electric Corp. v. Pierce, 153 Tex. 527, 271 S.W. 2d 422, said: "* * * The provision is a salutary one, directed at arriving at the true legal rights of the parties under the true facts, but we cannot hold that the trial court abuses its discretion in denying the right to file a trial amendment when the record discloses a probable resulting prejudice to the opposite party 'in maintaining his action or defense.'"

As we view the record, the trial court was justified in concluding that the proffered amendment and the testimony supporting it would have resulted in prejudice to appellees.

The right of the condemnor to plead and prove condemnee's remaining land was benefited and enhanced in value by reason of the taking is, with certain exceptions, authorized by our statutes. Article 3265, Vernon's Ann.Tex.Civ. Statutes. The question of whether or not the condemnation resulted in some enhancement of the value of the remaining lands is a question of fact. Upon a finding of enhancement, the condemnor is permitted to offset or recoup such enhanced value against any damage which may have resulted to such remaining lands by reason of the condemnation. Haley v. State, supra. Thus, the effect of the proffered trial amendment was to set up an affirmative defense by which appellant sought to prove special benefits and to recoup damages to the extent of the enhancement. Rule 94, Texas Rules of Civil Procedure; Alley v. Bessemer Gas Engine Co. (Tex.Civ.App.), 228 S.W. 963; Vol. 36A, Words and Phrases, Recoupment p. 88, 101.

Had the trial court permitted the trial amendment, the appellees would have been placed in a position similar to that of a cross-defendant. There is nothing in the record indicating that appellees had any advance notice that appellant was claiming special benefits or enhancement in value. Although the cause had been pending for approximately two years, it appears that the first notice of such claim was given on the second day of the trial when appellant attempted to set up such affirmative defense by way of a trial amendment. As we see it, the proffered trial amendment had the effect of changing the entire factual basis of the lawsuit and suddenly placed the appellees in the position of having to rebut an entirely new affirmative defense without adequate time to prepare for the same. Since the new matter sought to be injected by appellant was entirely factual, it occurs to us that in fairness, the appellees were entitled to a reasonable notice in order to afford them an opportunity to prepare for trial upon such new facts.

Had the trial court permitted the filing of the proffered amendment, the appellees would have been required to have launched a completely new investigation. It would have been necessary for appellees to retain appraisers for the purpose of appraising the land for residential and suburban use and would have required appellees to have re-appraised their suit in the light of new facts. To have required appellees to re-shape their entire suit during trial would have imposed an undue burden and would have resulted in prejudice to the appellees. Moreover, it would have required a lengthy postponement resulting in an undue imposition upon the court and the jury. To require the trial court to permit amendments such as the one filed in this case would disrupt orderly procedure and lead to frequent interruptions and interminable delay in concluding expensive jury trials. Westinghouse Electric Corp. v. Pierce, supra.

By points 18 through 20, appellant asserts that it was error to permit appellees' witnesses, Charlie Hubbard, I. W. Brown and Robert C. Sullivan, to give their opinion of the market value of the subject property over appellant's objection that the witnesses were not shown to be competent to testify and in overruling its motion to strike said testimony.

■■■ The general rule is that a witness need not be an expert in a technical sense in order for his opinion as to values to be received. However, he must possess (1) knowledge of the value standards of the class of property to which the subject property belongs. In this connection (a) he must have a knowledge of market value (b) in the vicinity of the subject property (c) based in part at least on personal observation and not solely on hearsay. And (2) the witness must have a knowledge of the particular property that is to be valued though in some instances it is not necessary that the witness have seen the property, as the factual information may in some instances be supplied by a hypothetical ques-

tion. McCormick & Ray, Texas Law of Evidence, Volume 2, page 257–261, 2d Ed.; State v. Sides (Tex.Civ.App.), 348 S.W.2d 446.

■■■ The witness's own statement that he knows the land in question and is acquainted with the market value is usually held sufficient to authorize the reception of his testimony as to value. The fact that the witness is not a real estate broker or does not consider himself an expert goes only to the weight to be given his testimony and not to the admissibility. State v. Newton (Tex.Civ.App.), 391 S.W. 2d 758; State v. Sides, supra.

■■■ It is well settled in this state that the question of whether or not a witness is qualified to testify as to market value is largely discretionary with the trial judge and that an appellate court should not disturb the action of the trial court in admitting such testimony in the absence of a clear abuse of discretion. Breithaupt v. State (Tex.Civ.App.), 321 S.W.2d 361; State v. Evans (Tex.Civ.App.), 340 S.W.2d 99.

■■■ Applying the above principles to the facts of this case, it is our opinion that each of the witnesses was qualified to testify as to the market value of the land taken and the land remaining, and that the trial court did not abuse his discretion in admitting their testimony. Points 18 through 20 are overruled.

In points 11 through 16, appellant takes the position that there is no evidence, or insufficient evidence, to sustain the jury's finding to special issues Nos. 1 and 3, and alternatively, that the judgment is against the overwhelming weight and preponderance of the evidence.

The evidence shows that prior to the condemnation, appellees owned 191 acres of land which were in three tracts. The south tract was the largest of the three and was bounded on the south by Caney Creek. Said tract had a common corner with the

middle tract. The middle tract was separated from the northernmost tract by State Highway No. 1214. The land taken in the condemnation amounted to 53.46 acres of land, leaving appellees with 137.54 acres. Appellee Hubbard testified that he had previously used the property in question to raise corn, peas, cotton, watermelons and cattle, and that the land had been most recently used to grow feed crops and to pasture cattle. He testified that he had always operated the land as one unit. The improvements on the land consisted of a house, barn, chicken house and a deep well. The 53.46 acre tract which was taken in condemnation did not include the improvements, but the tract taken did include a clay pit from which Hubbard testified that he sold clay for commercial uses. He also testified that the land taken was bottom land and was most valuable land for farming purposes. The evidence shows that as a result of the condemnation, the lake separated the lower tract from the upper two tracts. Hubbard testified that the property taken was worth $16,038.00; Brown testified that the market value of the property was $13,375.00; and Sullivan testified that it had a market value of $13,365.-00. Appellant's witnesses, Manning, Kinabrew, Craig and Paschall, each stated that the value of the property taken was around $8,000.00.

With respect to the market value of the remaining land, appellant does not challenge the jury's finding on Special Issue No. 2 finding that the market value of the remaining land, exclusive of the tract condemned, immediately before the taking was $29,542.90. The attack is upon Special Issue No. 3 finding that the market value of the land immediately after the condemnation was $25,014.40.

With regard to the value of the remaining land immediately after the taking, appellee testified that as a result of the condemnation, his remaining lands had decreased in value by 50% and therefore had a value of approximately $15,000.00. Brown testified that the market value of the 137.54 acres immediately after the condemnation was $14,865.50 and Sullivan testified that in his opinion the remaining lands had a market value of approximately $15,065.00. The witnesses produced by appellant testified that in their opinion the market value immediately after the condemnation was the same as the value immediately before condemnation. In other words, they took the position that appellees' remaining lands had not been damaged by reason of the condemnation.

The jury saw and heard each of them as they testified, and were in the best position to appraise their credibility and weigh their testimony. Russell Coleman Oil Mill v. San Antonio, U. & G. R. Co. (Tex.Civ. App.), 37 S.W.2d 165; City of Fort Worth v. Estes (Tex.Civ.App.), 279 S.W.2d 687.

After a review of the entire record, we are convinced there is ample evidence of probative force to support the jury's findings upon both Special Issues Nos. 1 and 3 and that the verdict and the judgment based thereon are not against the overwhelming weight and preponderance of the evidence. Points 11 through 16 are overruled.

Nor do we believe the damages assessed by the jury to be excessive. Neither the trial court nor the reviewing court can substitute its judgment of values for that of the jury, which has before it competent evidence as to damage. Tennessee Gas Transmission Company v. Dishman (Tex.Civ.App.), 303 S.W.2d 471, citing Mitchell v. Texas Electric Service Co. (Tex.Civ.App.), 299 S.W.2d 183. Appellant's 17th point is overruled.

The judgment of the trial court is affirmed.