STATE of Texas ex rel. CITY OF WICHITA FALLS, Appellant,

v.

William W. RUST et ux., Appellees.

No. 17227.

Court of Civil Appeals of Texas, Fort Worth.

June 11, 1971.

Rehearing Denied July 2, 1971.

H. P. Hodge, Jr., City Atty., and Malcolm L. Hughes, Asst. City Atty., Wichita Falls, for appellant.

Short & Helton, and Donald E. Short, Wichita Falls, for appellees.

## OPINION

BREWSTER, Justice.

The City of Wichita Falls filed this suit to condemn the fee simple title to a 2.684 acre tract in Wichita Falls belonging to condemnees for use in constructing and operating a freeway project known as the Kell Freeway. A jury trial was had in which the sole question to be determined was the market value of the land taken. Being dissatisfied with the judgment rendered the City has appealed.

The City's Point 1 is that the court erred in letting appellee, Rust, testify that he sold small motors out there (on the land in question). In Point 2 the City contends that the Court erred in letting appellee, Rust, testify that he sold on this property cabin cruisers for as high as $45,000.00.

The City contended that letting these two bits of evidence in permitted the condemnee to get into the case inadmissible evidence bearing on profits derived from condemnee's business operated from the premises in question. The City further contended that the admission of such evidence violated a court order previously entered on motion in limine ordering evidence of such profits suppressed.

The mere fact that the court ruled differently when the evidence was offered than he did when considering whether to suppress such evidence on motion in limine would not necessarily mean that the court's last ruling was erroneous. A trial court is many times required to change a prior ruling after further deliberation.

The evidence showed that from these premises at the time in question the condemnees were operating a business that they called Wichita Marine Company which business handled both the sales and service of pleasure boats, commercial boats, and fishing boats, boat motors, and boat trailers. A 1,030 square foot brick house (where condemnees lived) with a 340 square foot attached garage was located on the premises. Also located there and used in connection with operating the business was a 7,320 square foot rigid metal building with a 6 inch concrete floor used as the boat shop. It also had a 600 square foot wood frame and steel paint shop and a 1,962 square foot pipe frame and steel boat storage shed.

We overrule the appellant's first two points.

Two value witnesses used by condemnees and one value witness used by the City testified that the highest and best use of condemnees' land was the use to which condemnee was putting it in operating his Wichita Marine Company business. The other value witness used by the City testified that in his opinion the highest and best use of the property would be commercial use with outside storage area.

Under this state of the record it was proper for the condemnee to offer evidence to let the jury know the nature of the business being conducted on these premises by the condemnee. Proof that condemnee's business was such that it sold boats ranging in size all the way from ½ horsepower up to luxurious cabin cruisers was admissible because this evidence was merely descriptive of the nature and type of business that condemnee was conducting on the premises at the time in question and thus showed the use to which condemnee was putting the land.

The condemnor's Point 2 could not constitute error for the additional reason that the question objected to was never answered.

The City by its third point claims the court erred in letting the condemnee, Rust, testify that the traffic flow by the lot in question had increased between the time he opened his business and the time of the trial and by Point 4 the City claims error in letting Rust testify that the traffic toward the lake had been increasing each year.

The contention was that this evidence was irrelevant and immaterial and was offered only to influence the minds of the jury.

We overrule both of these points. All value witnesses gave their opinions that the highest and best use to which this property could be put was for a commercial use. The amount of traffic that uses the street on which property faces is a material factor to be considered in determining the market value of such property for commercial use. The market value of land for commercial purposes depends to a great extent on its location and on the amount of travel that goes by it.

In State ex rel. McKelvey v. Styner, 58 Idaho 233, 72 P.2d 699 (1937) the Court held that the location of property condemned and the flow of traffic by it are always proper elements to be considered in determining the market value of property actually taken.

To the same effect see State ex rel. Herman v. Wilson, 103 Ariz. 194, 438 P.2d 760 (1968) and Nichols on Eminent Domain, Third Edition, Vol. 5, Sec. 18.11(1). See also Gulf, Colorado & Santa Fe Railway Co. v. Abbey, 313 S.W.2d 108, Syllabus 5 (Fort Worth Tex.Civ.App., 1958, no writ hist.).

By its fifth point the City contends that the court erred in letting Mr. Rust testify that after being told that his land was to be condemned he made an investigation to try to locate a suitable building or a suitable site for his business.

When this question was asked the City objected on the grounds that it was "irrele-

vant and immaterial." The objection was overruled and the witness answered "I did," and the matter was not pursued further.

■ In its Point 6 the City contends that the court erred in letting Mr. Rust testify that he also made a search to buy a home.

Counsel for the City merely stated that he objected to this last question—no grounds for the objection were stated, and the court overruled the objection. The witness then answered "Yes, sir" and the matter was not pursued any further.

The witness was not asked to tell what his investigation in either case revealed. No objection was made to the landowner giving his opinion as to the market value of the property.

We overrule both of these points.

Mr. Rust was one of the owners of the land being condemned. His opinion of the market value of his land was therefore admissible in evidence for this reason alone. City of Teague v. Stiles, 263 S.W.2d 623 (Waco Tex.Civ.App., 1953, ref., n. r. e.) and Gulf, Colorado & Santa Fe Railway Co. v. Abbey, supra. See also Nichols on Eminent Domain, Third Edition, Vol. 5, Sec. 18.4(2).

The two questions complained of were asked the condemnee, Rust, while his counsel was asking him questions to show his qualifications to give an opinion as to the market value of the property. On this condemnee Rust testified: he was familiar with the property being condemned; he owned it and ran his business from it; he had bought and sold property in Wichita County over the past several years and had kept up generally with some of the commercial sales of property in that county.

We hold that it was proper evidence in qualifying this landowner as a value witness to let the jury know that he had also in recent months made an investigation trying to locate a suitable site for a business such as his own. He would probably know more about market values of such properties after making such an investigation than he would beforehand.

We are required to overrule Point 6 for the additional reason that when the City objected to the evidence complained of no grounds for such objection was ever given.

The law on this is that where an objection to testimony is made but no grounds for the objection are ever stated, such objection will be disregarded. City of San Antonio v. Potter, 31 Tex.Civ.App. 263, 71 S.W. 764 (1903, writ ref.) and Irvin v. Johnson, 56 Tex.Civ.App. 492, 120 S.W. 1085 (1909, no writ hist.).

■ In its Points 7 through 10 the City contends that the court erred in letting the witness, Henderson, testify that the Chrysler property, Sizzling Sirloin Steakhouse property and Shamrock Station sales were comparable sales and to give detailed information of such sales. The City contends that none of such sales were comparable and that the evidence was not admissible for that reason.

The record in the case reflects that the testimony complained of was offered by the condemnees' real estate expert on direct examination to show a part of the factual basis upon which he founded the opinion that he had testified to as to the market value of the land being condemned. This would bring the point under Condition II of the Hays' case that is hereinafter referred to.

The witness, Mr. Henderson, was a bonded real estate broker in Wichita Falls; he was a partner in a firm there that specialized in dealing with the sale of commercial and farm and ranch properties; he had lived in Wichita Falls for 12 years; appraising real estate was a part of his business; and whatever appraisal ability he had was gained through practical experience.

The appellant has at no time ever contended that this witness was not qualified to give his opinion of the market value of

the property involved. When he was asked to state his opinion of the market value of condemnees' land at the date of the taking appellant made no objection whatever to either the question or the answer.

The problem that was involved in State v. Oakley, 163 S.W.2d 463, 356 S.W.2d 909 (Tex.Sup., 1962) is not involved here. The witness here had first-hand knowledge of each of the three alleged comparable sales, because he and his firm were the real estate brokers that handled each of said sales.

The particular question raised here involves the admissibility of the expert's testimony as to comparable sales on direct examination when such testimony is offered for the purpose of showing in part the factual basis upon which the expert formed his opinion of the market value and when the admissibility of such testimony is questioned solely on the basis that the lands involved in those other sales are not sufficiently similar to be comparable.

The Supreme Court in the Oakley case, supra, at page 911 of the opinion, refers to three Civil Appeals' opinions for the law in Texas on this point as of the date of that opinion. These cases are Hays v. State, 342 S.W.2d 167 (Dallas Tex.Civ. App., 1960); State v. Morse, 342 S.W.2d 165 (Dallas Tex.Civ.App., 1960); and State v. Sides, 348 S.W.2d 446 (Dallas Tex.Civ.App., 1961). The Supreme Court had refused writs, n. r. e., in each of those cases.

The following is from the opinion in the Hays case, supra, 342 S.W.2d at page 170:

"Evidence of sales of comparable properties may be offered under three conditions: (I) on direct examination of expert or lay witnesses as independent substantive evidence of the value of the property to which the comparison relates, or (II) on direct examination of the value-witness to give an account of the factual basis upon which he founds his opinion on the issue of value of the real estate in controversy, or (III) on cross-examination of the value-witness to test his knowledge, experience and investigation and thus affect the weight to be given to his opinions. * * "

The testimony in this case shows that the lands involved in the alleged comparable sales were in some ways similar to the land being condemned and it also shows that in other ways said tracts were not similar to the condemnees' tract. We make no effort to demonstrate here the similarities and dissimilarities between these various tracts because of the large volume of evidence relating to that subject.

This same situation existed in State v. Sides, supra. There the trial court admitted the expert's testimony of the alleged comparable sales and complaint was made of such action on appeal. The Court of Civil Appeals said of the witness' testimony the following 348 S.W.2d at page 452: "He was held to be qualified. Having thus qualified he was properly permitted to testify as to market value. The alleged weakness of his supporting facts and reasons, including comparable sales, goes to the weight of his testimony, not to its admissibility. The Court did not abuse its discretion in admitting the challenged testimony."

The Dallas Court of Civil Appeals in the Hays case announced the law applicable to the point in question here 342 S.W.2d at page 174 of the opinion as follows:

"We conclude, therefore, that each expert value-witness having been held qualified to express an opinion as to the value of the land being condemned should be permitted to give the details of sales upon which he bases such opinion, after he has stated that the sales are of property sufficiently comparable to the property involved for appraisal purposes, and were from his knowledge or investigation voluntary sales in the economic area of the condemned property made within a time during which no material changes in market conditions had occurred. But should it appear that reasonable minds cannot differ from the conclusion that the evidence of another sale

lacks probative force because of dissimilarities, remoteness in time and distance, or not being voluntary, then the trial court should exclude evidence of the details of such other sales."

That court stated of the objections to evidence such as we have here as follows at page 174 of the opinion: "As has been said so many times by the Texas courts 'the objections urged go to the weight, rather than the admissibility of the evidence.' "

The degree of similarity of land is largely within the trial court's discretion in determining the admissibility of evidence concerning other sales in a condemnation suit. State v. Reece, 374 S.W.2d 686 (Houston Tex.Civ.App., 1964, no writ hist.); State v. Helvey, 375 S.W.2d 744 (Tyler Tex.Civ.App., 1964, no writ hist.); and State v. Powell, 376 S.W.2d 929 (Dallas Tex.Civ.App., 1964, no writ hist.). The following is from the Powell opinion at page 930 (referring to City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808): "We do not construe that opinion as requiring absolute similarity before properties can be compared for the purpose of forming an opinion as to values. So far as we know, no court has ever made such a requirement. Reason and experience tell us that no two pieces of real property could ever be found which were exactly similar. All the law requires in this respect is that the properties be reasonably similar, and our courts have frequently held that it is within the sound discretion of the trial court to determine whether or not the properties offered for comparison meet the test of similarity." (Cites cases.)

A trial court has great discretion in making this determination. Ford v. State, 432 S.W.2d 720 (Amarillo Tex.Civ.App., 1968, no writ hist.) and Crouch v. State, 413 S.W.2d 141 (Houston Tex.Civ.App., 1967, no writ hist.).

The trial court's ruling in such cases will not be disturbed on appeal unless there has been an abuse of discretion. See Holcombe v. City of Houston, 351 S.W.2d 69 (Houston Tex.Civ.App., 1961, no writ hist.) and Bruner v. State, 391 S.W.2d 149 (Fort Worth Tex.Civ.App., 1965, ref., n. r. e.).

On this point the Supreme Court of Colorado in Wassenich v. City and County of Denver, 67 Colo. 456, 186 P. 533, at page 536 (1919) stated the following: "True, each tract possessed many differences, just as things that are similar may differ in many respects. But that does not make the evidence inadmissible. * * * All business property in a general section, or all residence property in a general locality, is similar in the sense in which the word is here used, though each parcel may possess many points of difference. Similarity does not mean identical, but having a resemblance. No general rule can be laid down regarding the degree of similarity that must exist to make such evidence admissible. It must necessarily vary with the circumstances of each particular case. Whether the properties are sufficiently similar to have some bearing on the value under consideration and to be of any aid to the jury, must necessarily rest largely in the sound discretion of the trial court, which will not be interfered with unless abused."

It was within the sound discretion of the trial court under the facts of this case to determine whether or not the land involved in the other sales met the test of similarity that is required by law to make such evidence admissible. We hold that the trial court did not abuse its discretion in admitting this evidence and therefore overrule the City's Points 7 through 10 inclusive.

■ By its 11th point the City contends that the trial court erred in allowing the value witness, Healy, to testify that a sale of land from N. A. Realty Company to Dr. McKinney was a comparable sale. The objection urged was that the sale was not comparable and that the sale was con-

summated after the taking of the Rust property.

What we have heretofore said about the City's Points 7 through 10 relative to the admissibility of evidence relating to other sales applies with equal force to this Point 11. The land involved in the other sale was commercial property and was located just west of and in the immediate vicinity of the tract being condemned. Whether to admit the evidence as a sale of similar land was within the trial court's discretion and we hold that he did not abuse his discretion in admitting such evidence.

The fact to be established in this case was the market value of condemnees' land on the date of the taking of such land by the City. The record shows this date to be October 12, 1970. The trial of this case started December 8, 1970, and the witness, Healy, testified that the Dr. McKinney's sale was consummated during the week prior to that. So actually this "other sale" occurred approximately one and one-half months after the taking by the City of condemnees' land.

We hold that the admission of evidence of this sale of comparable property in the area, made one and one-half months subsequent to the date of the taking of such land was not error in view of the fact that there had been no showing that the public improvement that the land was condemned for would enhance the value of the land in that area. See Housing Authority of City of Dallas v. Shambry, 252 S.W.2d 963 (Austin Tex.Civ.App., 1952, ref., n. r. e., in 152 Tex. 122, 255 S.W.2d 184) and Housing Authority of City of Dallas v. Hubbard, 274 S.W.2d 165 (Dallas Tex.Civ. App., 1954, no writ hist.).

■ By Point 12 the City contends that the court erred in not making the witness, Healy, be responsive to questions asked by the City's attorney, Mr. Hughes, and in letting him explain his answer when asked if Dr. McKinney's tract was not a corner lot.

The following are the proceedings complained of verbatim:

"BY MR. HUGHES: Is it a corner lot?

"BY MR. SHORT: You can answer it by explanation if you would like to.

"BY MR. HUGHES: I don't think he has a right. He is supposed to answer my question, your Honor, and not—

"THE COURT: Well, we will give him a chance. Go ahead.

"A. All right, there is a little street that was an old street called Sisk road, and houses and there is a nursing home built right up on the street and houses right up on the street. It is a small street that probably can be widened. It is a little neighborhood street, but I would not class that as a corner location. In the first place it doesn't have the traffic on it, and it is not—it is just not what you would call a feeder street or connecting street of any kind. It is just a little residential shortcut that goes down there between Southwest Parkway and the Seymour road, a little cut-off in there.

"Q. But it is on two streets, is it not?

"A. I guess you could call Sisk road a street—you would be stretching a point there.

"Q. That would be a corner lot?

"A. It would be a corner lot but in the term of describing real estate, it would not be a corner location."

We overrule the City's Point 12.

The witness had a right to explain his answer as he did. His explanation gave the jury a better picture of the land in question than a direct answer to the question would have afforded them. These proceedings do not reflect error.

In addition to that we are convinced that the proceedings complained of do not reflect that appellant preserved a good bill of exception to the matter complained of.

The judgment is affirmed.